### CRAIN et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 10064.

Circuit Court of Appeals, Eighth Circuit.
March 11, 1935.

George E. H. Goodner, of Washington, D. C., for petitioners.

J. P. Jackson, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before WOODROUGH and FARIS, Circuit Judges, and DONOHOE, District Judge.

FARIS, Circuit Judge.

The Board of Tax Appeals, having sustained a deficiency assessment against petitioners in the sum of $1,042.45, for income taxes for the year 1919, the case comes to this court on a petition to review the decision of the Board. It arose on the following simple and conceded facts:

Prior to 1916, the taxpayer, now deceased (and herein represented by appellants who are executors of decedent's estate), jointly with one Wesson, his son-in-law, became obligated to pay certain debts of the National Car Advertising Company, of which decedent and Wesson were large stockholders. The National Car Advertising Company failed in 1913, and was finally liquidated. In 1916, it was definitely ascertained that Wesson and decedent (to whom for brevity, as also to appellants, we shall refer as the taxpayer) were jointly liable on their assumed obligations for the debts of the National Car Advertising Company, in the sum of a little more than $80,000. The taxpayer was not possessed of cash sufficient to pay his half of this $80,000. So, having paid a small part in cash, it was agreed that Wesson should pay the whole of the debt, representing the loss, which he did in 1916, taking the note of the decedent taxpayer for the sum of $40,000.

This note was not paid till 1919, for which year the taxpayer, through his legal representatives, is here seeking to deduct the sum of $40,000, so paid, from decedent's taxable income for that year. When the taxpayer actually paid the note to Wesson, he did so by drawing the draft of Lee Wilson & Co., a trust concern in which the taxpayer was a trustee, on Wilson, Ward & Co., a corporation engaged in business as cotton factors, of which taxpayer was a stockholder and director. This draft drawn in favor of Wesson was honored, in November, 1919, and Wesson canceled the note and returned it to the taxpayer.

When the taxpayer made the draft of Lee Wilson & Co. on Wilson, Ward & Co., he then owed the former more than $66,000, on open, running account. The amount of this draft increased the sum owing by the taxpayer to Lee Wilson & Co. to more than $106,000. The $40,000 was later repaid (the record does not show when, if at all relevant) to Wilson, Ward & Co., by Lee Wilson & Co., by shipments of cotton. Later (and again the time is not shown), but certainly not in the year 1919, the taxpayer paid his account, including the $40,000, to Lee Wilson & Co.

It is conceded that the taxpayer made his returns and paid income tax on the cash receipts and disbursements plan. Likewise, that under the law then in force, section 214 (a) Revenue Act 1918 (40 Stat. 1057), 1066, the taxpayer was, upon the undisputed facts, entitled to claim a loss of $40,000. The sole question is whether he should have deducted this loss in 1913, when the National Car Advertising Company failed and was liquidated; or in 1916, when he made the note to his son-in-law for his part of the loss; or in 1919, when he actually paid this note by draft of Lee Wilson & Co., on Wilson, Ward & Co.; or later, when he actually paid his open, running account to Lee Wilson & Co. The undisputed facts show that the taxpayer knew in 1913 that he was liable and would have to pay his moiety of losses sustained by the failure of the National Car Advertising Company. The fact of loss was then certain. Touching whether in that year such loss became sufficiently definite in amount as to warrant a book entry is blind on the record; but not important in the view we are constrained to take of the case.

But in the year 1916, the amount of loss sustained became definitely certain, and the whole of it was actually paid by Wesson. Since the taxpayer did not himself have on hand enough cash to pay his half, he agreed with Wesson that the latter should advance all of the money in payment of the loss, and the taxpayer would make to Wesson a note for the taxpayer's half of such loss.

In fair effect, what the taxpayer did in 1916 was to borrow $40,000 in money with which to pay the loss, now here in dispute, as to the date of its accrual for taxing purposes. It seems clear, from the facts here and the ruled cases, that the loss occurred in 1916. Avery v. Commissioner (C. C. A.)

22 F.(2d) 6, 55 A. L. R. 1277; Darling v. Commissioner (C. C. A.) 49 F.(2d) 111. Did the giving of the note to Wesson have the effect to lawfully postpone deduction of the loss from income till the year in which the note was paid?

The taxpayer contends that it did, and, so contending, relies largely on the case of Eckert v. Commissioner, 283 U. S. 140, 51 S. Ct. 373, 374, 75 L. Ed. 911, as decisive in his favor. In the Eckert Case, supra, the taxpayer there and his partner were jointly liable to a bank as indorsers on notes otherwise worthless. They took up these notes by substituting therefor their own note made payable directly to the bank. The taxpayer therein then deducted the amount of the note as a loss allocable to the year in which the note was made, though it had not been paid at all at the time the amount thereof was deducted from income. It was held by the Supreme Court that the taxpayer then was not entitled to deduct the amount of the note to the bank, because the debt to the bank acquired by the taxpayer as consideration for his new note was worthless when acquired; because the taxpayer there (as here) was on a cash basis plan of income tax payment; because there was presently no "outlay of cash or property having a cash value," and because deduction is not permissible till the taxable year in which, in such situation, the taxpayer pays cash. In other words, what was there done did not have the effect to decrease the taxpayer's income for the year in which the note was made, and would have no such effect till the note was actually paid in cash.

So we think there are distinguishing differences between the situation in the Eckert Case, supra, and that in the case at bar. Here, the loss was paid in full in cash by Wesson and wholly extinguished; there, a mere change from secondary liability for the debt or loss, to primary liability, occurred. Here, after the loss was paid by Wesson, the taxpayer owed Wesson and not the original creditor; there, the taxpayer still owed the original creditor for the loss, having, as said, changed the nature of his obligation only in degree. If, instead of paying his obligations to the creditors of

the National Car Advertising Company in cash, as was done, the taxpayer here had given his note therefor, much legal comfort would be deducible from the Eckert Case. But the moment a loss of the sort here is paid, a loss is incurred, and no borrowing from Peter to pay Paul, if a homely saw may be paraphrased, will serve to change the situation. So far as the situation among taxpayer's lending creditors is concerned, the debt due to Wesson stood in no better case than did the debt due to Lee Wilson & Co., from whom the taxpayer borrowed to pay Wesson.

Moreover, counsel agree, and the decisions of the Board of Tax Appeals sustain their agreement, that the fact that a loss is paid in borrowed money does not have the effect to change the date at which the loss was sustained from the year of the loss to the year in which the borrowed money was repaid.

In the case of Keenan v. Commissioner, 20 B. T. A. 498, 499, it is said: "That the payments were made with borrowed money is not material and can not have the effect of postponing the deductions until the years in which the borrowed money was repaid. To hold otherwise would in effect permit taxpayers to elect the years in which expenses might be deducted from income."

To the same effect are the cases of Weis v. Commissioner, 13 B. T. A. 1284; Crawford v. Commissioner, 11 B. T. A. 1299, and Perry v. Commissioner, 28 B. T. A. 497.

If the taxpayer had himself actually paid in cash his part of the loss in 1916, it would hardly be contended that he could not, in that year, have charged the sum paid as a proper deduction from his income for that year. It is difficult to see how the situation was changed merely because he was forced to borrow money from another with which to pay his part of the loss.

However, we are not called on to rule in what year this loss was properly deductible. The question up for judgment is whether it was, on the facts conceded, deductible in the year 1919. We are of opinion that, in ruling it was not, the Board of Tax Appeals was correct. It results that the case should be affirmed.