W. H. HARRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14143.   Promulgated November 29, 1948.

*W. H. Harris, pro se.*
*F. L. Van Haaften, Esq.*, for the respondent.

866

LEECH, *Judge*: The primary question presented is whether the respondent erred in disallowing petitioner a loss deduction in the amount of $10,800 on his income tax return for the year 1942. Petitioner contends that, since he reported his income on a cash basis, and the payments were made in 1942, his loss was sustained in that year. Petitioner on his return for 1942 claimed the deduction of $10,800 as bad debts, deductible under section 23 (k) of the Internal Revenue Code. He now contends that the amount is deductible under section 23 (e), either as a loss incurred in carrying on a business, or in a transaction entered into for profit. There is no disputing the fact that petitioner sustained a loss of the amount claimed by him. Whether the loss is one deductible under section 23 (k) as a bad debt, or under section 23 (e) as a business loss, or as one incurred in a transaction entered into for profit, is unimportant here. *Alexander County National Bank*, 12 B. T. A. 1238.

The controlling factor is whether the "debt" became worthless in 1942, or whether the "loss" was sustained in that year. On the basis of this record, we think there is no merit in petitioner's contention that the deductibility is controlled by the fact that the payments were made on the mortgage notes in the year 1942.

Petitioner was the sole executor of his father's estate. The outstanding liabilities of the estate were considerable. In order not to sacrifice the assets by a prompt liquidation, petitioner undertook to administer the estate so as to salvage as much of its assets as possible. In order to secure renewals and extensions of the estate's obligations, petitioner was required to give, and gave, his personal endorsement. Petitioner discharged these estate obligations as best he could. Later, to secure funds to meet the estate obligations, he executed a mortgage note in 1918 and another mortgage note in 1933 in the respective amounts of $15,000 and $8,500. By subsequent payments petitioner reduced the $15,000 note to $8,800 and the $8,500 note to $2,375. In 1942, from the proceeds of a professional fee, he paid off the balance of $8,800 on the $15,000 mortgage note and the sum of $2,000 on the $8,500 note. The balance of $375 on the latter note was paid by petitioner in the taxable year 1943.

We think the transaction disclosed by this record is one whereby petitioner loaned his personal funds to the estate, which it was obligated to repay. The fertilizer factory and the cotton warehouse were disposed of in 1897. The small country bank was liquidated in 1914. The net operation of the estate was a loss. The estate ceased to exist ten or twelve years ago, without assets to repay its indebtedness to

petitioner. The debt became worthless at that time. The payment of the remaining balances on the mortgage notes given by petitioner in 1942 and 1943 did not extend his time to claim the bad debt deduction. Even if we assume petitioner was engaged in operating the estate as a business, or for profit, his loss was sustained when the estate became insolvent and ceased to exist.

Petitioner, however, contends that, although he knew prior to 1942 that he would sustain a loss by reason of his personal guaranty, since he was on a cash basis, the payments made in 1942 and 1943 on the mortgage notes, the proceeds of which he had used to discharge the estate's obligations, determine the time of the deductibility of such losses. *Eckert* v. *Burnet*, 283 U. S. 140. In that case, a taxpayer on the cash basis gave his note to the bank in settlement of his guaranty of a corporation's note to the bank, and claimed a deduction of a loss in the year the note was given. The note was not paid in that year. It was held that the giving of the note did not constitute a cash payment. The facts in the instant case are clearly distinguishable.

Petitioner, in 1918 and 1933, procured funds by the execution of mortgage notes on his individual properties. He used these funds to discharge the estate obligations he had personally guaranteed. The execution of these mortgage notes was not a mere continuation of the same liability. By that means he borrowed money from a third party for the specific purpose of paying the original liability. That loan was a new and distinct transaction. *T. Harvey Ferris*, 38 B. T. A. 312. Petitioner sustained a loss when he used these independent funds to discharge the estate's liabilities, thereby releasing his personal guaranty, and not when the mortgage notes were paid. Cf. *Samuel Eugene Bramer*, 6 T. C. 1027; affd., 161 Fed. (2d) 185; certiorari denied, 332 U. S. 771.

We, therefore, conclude that the respondent did not err in disallowing petitioner a deduction of $10,800 on his income tax return for 1942.

At the trial the respondent requested an increased deficiency resulting from his erroneous allowance of the claimed deduction of $375, which petitioner paid on one of the mortgage notes in the taxable year 1943. Since the 1943 payment is in the same category as the 1942 payments, we conclude, for the reasons stated, that respondent erroneously allowed the claimed deduction of the sum of $375 in 1943. The increased deficiency requested is allowed.

As a result of the disallowance of the claimed deduction of $10,800 in 1942, petitioner had net taxable income in that year. The second issue respecting respondent's disallowance of a claimed net operating loss carry-over to the taxable year 1943 becomes moot.

*Decision will be entered under Rule 50.*