Beatrice B. BRAMER, Cecil B. Mihaly and George C. Brown, Surviving Executors, Estate of S. Eugene Bramer, Deceased, Appellants

v.

UNITED STATES of America.

No. 12419.

United States Court of Appeals
Third Circuit.

Argued April 3, 1958.

Decided Sept. 30, 1958.

1956, 350 U.S. 116, 123, 76 S.Ct. 223, 100 L.Ed. 126.

Samuel Kaufman, Pittsburgh, Pa., for appellants.

Sheldon I. Fink, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., D. Malcolm Anderson, U. S. Atty., Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before KALODNER and HASTIE, Circuit Judges and LAYTON, District Judge.

KALODNER, Circuit Judge.

This appeal arises out of a suit to recover income and victory taxes paid by plaintiffs' decedent ("taxpayer") for the year 1943. The District Court denied relief, Kaplan v. United States, 154 F. Supp. 167, and this appeal followed. Two transactions are involved. They are the basis of taxpayer's two causes of action set forth in a single complaint. An issue common to both is whether the taxpayer, who made his income tax returns on the basis of cash receipts and disbursements, was entitled to deduct payments made in 1942 and 1943 on account of obligations arising from two separate loss transactions, or whether the losses were deductible only in prior years when the events occurred giving rise to them. As to one of the transactions, the

taxpayer previously litigated the same issue with respect to the year 1941. Bramer v. Commissioner, 6 T.C. 1027, affirmed, 3 Cir., 1947, 161 F.2d 185, certiorari denied 332 U.S. 771, 68 S.Ct. 85, 92 L.Ed. 356. There is presented, accordingly, the additional issue, whether taxpayer (via plaintiffs) is now restricted as to that transaction by the doctrine of collateral estoppel: Commissioner v. Sunnen, 1948, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

The facts relating to taxpayer's "First Cause of Action" are as follows:

Prior to May 13, 1931, taxpayer had a large margin account with the stock brokerage firm of Hornblower and Weeks. On this account he was indebted to that firm in a very substantial amount. As required by Hornblower and Weeks, taxpayer, who was without means to protect his margin account, posted as additional collateral 2,000 shares of common stock of National Steel Corporation obtained for this purpose from one William K. Frank. On or about May 13, 1931, the brokerage firm gave notice that it intended to close out taxpayer's undermargined account and to sell the National Steel stock which it was holding. Frank, rather than lose this stock, reclaimed it by paying to Hornblower and Weeks the sum of $84,000, its then market value. On the same date, taxpayer gave Frank his note for $84,000. Hornblower and Weeks sold out taxpayer's margin account at a heavy loss.[1]

In 1942 and 1943, taxpayer paid to Frank $21,250 and $35,036.12 on account of his indebtedness in this transaction, and on his returns for those years he claimed these amounts as deductions from gross income. The Commissioner disallowed the deductions, which resulted in a deficiency for the taxable year 1943. The Commissioner took the position that taxpayer's loss was sustained,

and therefore deductible, when the brokerage account was liquidated in 1931.

The facts relating to the second transaction, embraced in taxpayer's "Second Cause of Action" are as follows:

In 1929, taxpayer, William K. Frank and Lee B. Foster entered into a joint venture, called a syndicate, to purchase and sell the stock of International Rustless Iron Corporation. They were to share profits and losses equally, but Frank and Foster agreed to finance the syndicate through negotiating a loan with the Bank of Pittsburgh, N.A. In fact, Frank and Foster negotiated a loan with that Bank in the amount of $236,752.50, to purchase 60,000 shares of Rustless stock, the Bank receiving a note in that amount signed by the three syndicate members, and, as collateral, the Rustless stock and other securities supplied by Frank and Foster.

Between January 1, 1930, and July 14, 1930, the Bank sold 21,849 shares of the Rustless stock and applied the proceeds to reduce the debt of the syndicate to it. On his income tax return for 1930, taxpayer claimed a loss of $13,667.14, being one-third of the excess of the average cost of the said shares over the sales price.

On January 14, 1931, the Bank was owed $199,942.93. On that date, Frank and Foster each paid one-third of the syndicate obligation to the Bank, and taxpayer gave to the Bank his note for $66,647.64, representing his third of the obligation. The Bank retained 12,717 shares of the Rustless stock (being the taxpayer's third of the 38,151 shares held by the Bank after the 1930 sales), and also certain other securities which had been deposited with the Bank by Frank as collateral.

As of January 14, 1931, the Bank held two other notes from the taxpayer, each of which provided that property posted

---

1. As of December 31, 1929, taxpayer's indebtedness to Hornblower and Weeks had increased to $371,787.87. On December 31, 1930, his indebtedness to that firm was $302,634.07. After application to taxpayer's margin account of the $84,000 paid by Frank, and the proceeds of the sales of securities then remaining in the margin account, the taxpayer's indebtedness to Hornblower and Weeks, as of December 31, 1931, was $113,997.26.

as security therefor was also security for any other liability of the taxpayer.

From October 3, 1932, to August 1, 1935, all dividends from Frank's securities collateralizing the taxpayer's note dated January 14, 1931, were credited by the Bank to the principal indebtedness represented by the taxpayer's two smaller notes, except a small sum which was credited to interest on his note of January 14, 1931.

Beginning May 22, 1935, the Bank foreclosed on Frank's securities and applied the proceeds to principal and interest on taxpayer's note of January 14, 1931. On August 5, 1935, the Bank sold taxpayer's Rustless stock for $816.67, and applied part to the final liquidation of his note of January 14, 1931, and the balance was paid to William K. Frank, Inc., to which company William K. Frank had previously transferred his interest in the aforementioned collateral.

By August 1, 1935, funds amounting to $101,051.11, coming from either sales of Frank's stock or dividends thereon, had been applied by the Bank in satisfaction of the taxpayer's indebtedness. On that date, taxpayer gave to William K. Frank his promissory note in the amount of $100,839.17, the adjusted amount due on account of the above transactions.

Taxpayer claimed no deduction on his 1935 income tax return on account of the sales of his Rustless stock by the Bank in that year, but upon audit, a loss of $86,203.33, limited to $2,000 was allowed. Between 1939 and 1943, taxpayer made aggregate cash payments of $121,693.89 on account of his note dated August 1, 1935. These payments were made to the William K. Frank Trust, to which, on December 1, 1938, William K. Frank, Inc. had assigned the said note.

On his income tax return for 1941, taxpayer claimed as a deduction the payment made in that year on his note of August 1, 1935. This deduction was disallowed, as a result of which taxpayer sought review in the Tax Court. On May 9, 1946, the Tax Court sustained the Commissioner, 6 T.C. 1027, and, in due course, this Court affirmed, 1947, 161 F.2d 185, and the United States Supreme Court denied taxpayer's petition for writ of certiorari 332 U.S. 771, 68 S.Ct. 85, 92 L.Ed. 356.

On his income tax returns for 1942 and 1943, taxpayer claimed as deductions payments made in those years on his note of August 1, 1935. The Commissioner again disallowed the deductions, which resulted in a deficiency for the taxable year 1943.

We shall take up first the Hornblower and Weeks transaction (taxpayer's "First Cause of Action").

The District Court recognized that the taxpayer owed Hornblower and Weeks a large sum of money, partially collateralized by stock obtained from Frank for this purpose, which on the date of foreclosure had a value of $84,000 and that Frank paid the market value of the stock to Hornblower and Weeks rather than lose it. It said that the $84,000 was applied by Hornblower and Weeks [154 F.Supp. 169.] "in partial discharge of Decedent's [taxpayer's] debt", closing out his account at a heavy loss, taxpayer giving his note to Frank in the amount of $84,000. It held that what took place was a borrowing of $84,000 from Frank by taxpayer and use of the $84,000 in partial liquidation of a deductible debt.

On this basis, it concluded that since taxpayer had borrowed from another to make a payment on his debt, the loss was deductible in 1931, when the account was closed out, and the deduction could not be deferred until a later year when taxpayer made repayment on the borrowed funds.

We are of the opinion that the District Court was in error with respect to its disposition of taxpayer's First Cause of Action.

There is no dispute here that taxpayer suffered a loss which was deductible under the income tax laws, nor is there a dispute that such deduction, in the case of a cash-basis taxpayer, must be taken in the year in which "paid or

incurred". Internal Revenue Code of 1939, 26 U.S.C. 1952 ed., Sections 23 and 43.[2]

The sole dispute, therefore, is with respect to the year in which the particular loss deduction must be taken.

In this respect, there is no dispute that a cash basis taxpayer may deduct a loss only if he has satisfied the obligation arising from the transaction. Helvering v. Price, 1940, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836. Consistent with this principle, it has been held that the loss is deductible in the year in which it is paid, even though paid with borrowed funds, and the deduction may not be postponed to the year in which repayment of the borrowed funds is made. Haley v. Commissioner, 5 Cir., 1953, 203 F.2d 815, 819; Humphrey v. Commissioner, 9 Cir., 1937, 91 F.2d 155; Page v. Rhode Island Hospital Trust Co., 1 Cir., 1937, 88 F.2d 192, 121 A.L.R. 693; Crain v. Commissioner, 8 Cir., 1935, 75 F.2d 962; Harris v. Commissioner, 1948, 11 T.C. 864. Thus, a loss on account of worthlessness of stock is deductible when paid for, if paid for after the purchase date, even though the payment takes place after the year of actual worthlessness; if paid for with borrowed money, the loan is treated as a separate transaction. See 5 Mertens, Law of Federal Income Taxation (rev. ed.), Section 28.71, and the cases cited therein.

In the instant case, taxpayer actually owed Hornblower and Weeks for the stock involved. Frank was merely a guarantor, and the Commissioner has so treated him throughout this litigation. When Frank's stock, or his cash in lieu thereof, was applied by Hornblower and Weeks, it was not in discharge of taxpayer's obligation, since Frank was entitled to be subrogated thereto. Cf. Putnam v. Commissioner, 1956, 352 U.S. 82, 85, 77 S.Ct. 175, 1 L.Ed.2d 144. In practical effect, taxpayer did not "pay or incur" the loss on the stock in 1931; this

he began to do to Frank (or Frank's transferee) in 1942 and 1943. To the extent of such payments, he was entitled to deductions in those years.

Contrary to the view of the District Court, the fact that Frank paid Hornblower and Weeks the sum of $84,000, receiving back his stock, and the fact that taxpayer (then insolvent) delivered to Frank his note for $84,000, do not make out a case of borrowing. Without dispute, the cash delivered to Hornblower and Weeks by Frank was the then market value of his hypothecated stock, and was precisely the amount of his obligation on the day Hornblower and Weeks determined to realize on the collateral. The delivery of taxpayer's note was in recognition, and a crystallization, of taxpayer's implied obligation to Frank. A taxpayer on the cash basis does not sustain a loss by "satisfying" an obligation with notes rather than cash or property. Helvering v. Price, supra. The substitution of a note for an existing obligation is not the payment required as a condition for a deduction.

We conclude, therefore, that taxpayer was entitled to deduct the payments made on account of the Hornblower and Weeks transaction in his income tax returns for 1942 and 1943.

We turn next to the joint venture in the Rustless stock, taxpayer's Second Cause of Action.

The District Court determined that the same issues had been fully litigated by taxpayer in connection with payment made to Frank in 1941, as above related. On the authority of Commissioner v. Sunnen, supra, the District Court deemed the plaintiffs, in privity with the taxpayer, estopped to relitigate the substance of the transaction merely because he made subsequent payments.

We are of the opinion that the District Court correctly disposed of the Second Cause of Action.

---

2. Section 23(e) of the Revenue Act of 1928, c. 852, 45 Stat. 791, and Section 23(e) of the Revenue Act of 1934, c. 277, 48 Stat. 680, provide a similar deduction for the years 1931 and 1935, respectively.

The plaintiffs assert here that the doctrine of collateral estoppel is inapplicable because of a change in legal principle between the prior decision and the pending case, the said change being epitomized by Putnam v. Commissioner, supra. In addition, they contend that in view of Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, the affirmance of the Tax Court's decision (6 T.C. 1027) by this Court (161 F.2d 185) was not a review on the merits. Otherwise, the plaintiffs contend that the essential nature of the Rustless transaction was the same as the Hornblower and Weeks transaction, and that there again Frank was merely a guarantor, no independent "borrowing" having occurred.

We do not agree with the plaintiffs in any of these respects. The short answer, however, is that a reading of the Tax Court's decision proves that it found the Rustless stock was bought and paid for with borrowed money. Two of the joint venturers agreed to supply the purchase price, and they in fact arranged to and did borrow the purchase money from the Bank, posting collateral therefor; plaintiffs' deceased joined with them on the note obviously in performance of his agreement to share losses and profits in the purchase and sale of Rustless stock, and in recognition of his obligation to repay the advances of his co-venturers on his behalf. The Rustless stock was thus paid for, even though plaintiffs insist it was purchased on credit from the Bank. All of this, however, was a problem of identifying the independent character of the transactions, and rested in the first instance with the Tax Court: the practical effect of our decision on the appeal. Thus viewed, the Rustless stock transaction is not governed by the decision reached here in the Hornblower and Weeks transaction. Cf. Haley v. Commissioner, supra.

We find no reason to alter the District Court's conclusion with respect to the Rustless transaction, and hold that taxpayer was not entitled to deduct in 1942 and 1943 the payments made on account of his obligation in connection with that transaction.

In summary, we find that the District Court erred with respect to its disposition as to taxpayer's First Cause of Action and was correct as to his Second Cause of Action.

For the reasons stated the Order of the District Court will be vacated and the cause remanded for further proceedings not inconsistent herewith.