269 S.E.2d 358 (1980)
Charles TABLER t/a Foodarama Supermarket et al.
v.
BOARD OF SUPERVISORS OF FAIRFAX COUNTY, Virginia et al.
Record No. 781176.
Supreme Court of Virginia.
August 28, 1980.
*359 Richard F. Williamson, Alexandria (W. Curtis Sewell, Thomas & Sewell, P. C., Alexandria, on brief), for appellants.
David T. Stitt, County Atty. (Frederic Lee Ruck, Fairfax, on brief), for appellees.
Before I'ANSON, C. J., and CARRICO, HARRISON, COCHRAN, POFF, COMPTON and THOMPSON, JJ.
I'ANSON, Chief Justice.
In this appeal, we must determine whether the Board of Supervisors of Fairfax County (the County Board) possessed legislative authority to enact an ordinance requiring a minimum cash refund value on containers for nonalcoholic beverages.
On December 8, 1975, the County Board enacted the Beverage Container Ordinance, Fairfax County Code §§ 111-1-1 to 111-3-4. Section 111-3-1 of that Code, as amended on June 6, 1977, provides that every container in which nonalcoholic beverages are sold or offered for sale in Fairfax County must have a cash refund value of not less than five cents. The ordinance became effective on September 1, 1977.
On August 23, 1977, Charles Tabler, trading as Foodarama Supermarket, and a group of corporations engaged in the business of bottling and distributing soft drinks[1] (the appellants) instituted a suit challenging the validity of the ordinance and requesting both temporary and permanent injunctive relief against its enforcement. The petition for a temporary injunction was denied by the trial court in August 1977 and by this court in September 1977. In May 1978, the chancellor entered a decree holding that the County Board was authorized to enact the ordinance and dismissing the appellants' bill of complaint. We granted an appeal, limited to considering whether the County Board possessed legislative authority to enact the Beverage Container Ordinance.
As noted in several recent decisions, Virginia follows the Dillon Rule of strict construction concerning the legislative powers of local governing bodies. See, e. g., Commonwealth v. Arlington County Bd., 217 Va. 558, 573, 232 S.E.2d 30, 40 (1977). The Dillon Rule provides that local governing bodies have only those powers that are expressly granted, those that are necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable. Bd. of Supervisors v. Horne, 216 Va. 113, 117, 215 S.E.2d 453, 455 (1975). Accord, Hylton Enterprises, Inc. v. Board of Supervisors, 220 Va. 435, 440, 258 S.E.2d 577, 581 (1979); Fairfax Zoning Board v. Cedar Knoll, 217 Va. 740, 743, 232 S.E.2d 767, 769 (1977).
The appellees note that the General Assembly has expressly authorized counties to enact ordinances requiring property owners to remove garbage and litter, Code § 15.1-11; regulating the dumping of trash on a public highway, Code § 33.1-346(e); and providing for the health, safety, and welfare of county residents, Code § 15.1-510. These Code sections clearly do not, however, provide express authority to adopt the provisions *360 of the ordinance at issue. Thus, we must determine whether the County Board was impliedly authorized to enact such legislation.
Questions concerning implied legislative authority of a local governing body are resolved by analyzing the legislative intent of the General Assembly. Arlington County Bd., 217 Va. at 577, 232 S.E.2d at 42. This court has consistently refused to imply powers that the General Assembly clearly did not intend to convey. "[W]hen legislative intent is plain, our duty is to respect it and give it effect." 217 Va. at 579, 232 S.E.2d at 43. In determining legislative intent, we have looked both to legislation adopted and bills rejected by the General Assembly. For example, in Arlington County Bd., holding that localities lacked the implied power to enter into collective bargaining agreements, we noted the General Assembly's adoption of a resolution rejecting such a power and the General Assembly's consistent rejection of proposed legislation altering that policy. 217 Va. at 564-65, 577-78, 232 S.E.2d at 35, 42.
In their briefs and in oral argument, the parties have discussed Acts 1978, c. 765 (codified as Code § 10-213.1)[2] and House J.Res. 174, Acts 1978, at 1991-92.[3] Although Code § 10-213.1 preempts any local ordinance requiring a deposit on a disposable bottle, the General Assembly provided in clause 2 that "this act shall not affect the validity of any local ordinance adopted and in litigation" as of March 4, 1978, "or any adjudication thereon." Acts 1978, c. 765, cl. 2. Because the Fairfax ordinance meets the criteria specified in clause 2, the appellees argue that clause 2 is an implicit acknowledgment of the County Board's authority to enact such legislation. The appellants suggest that clause 1 indicates the General Assembly never intended to confer such a power. Both arguments require a consideration of the provisions of the act, contrary to the terms of clause 2, which reflects the legislature's long-standing policy of not interfering with pending litigation. Because of the directive found in this clause, we shall not consider the provisions of this statute in passing upon the validity of the ordinance.[4]
The General Assembly's actions in regard to proposed legislation concerning beverage containers indicate that the legislature did not intend to confer upon local governing bodies the power to set a minimum refund value for such containers. In the 1972 legislative session, the General Assembly did not enact either of two bills proposing a ban on nonreturnable bottles.[5] In the 1974, 1975, and 1976 sessions, the General Assembly rejected bills which would have placed a tax upon nonreturnable beverage containers.[6] In several recent sessions, the General Assembly has refused to adopt proposed legislation which would have set a minimum refund value on beverage *361 containers.[7] Moreover, in the 1971 and 1976 sessions, while considering several proposed amendments to the charter for the City of Alexandria, the General Assembly rejected proposed amendments explicitly granting Alexandria the power to regulate or prohibit the sale or use of disposable containers.[8] These actions by the General Assembly indicate clearly and unambiguously that the legislature did not intend to grant local governing bodies the power to regulate or prohibit the sale or use of disposable containers. Accordingly, we hold that the County Board did not have legislative authority to enact legislation setting forth a minimum cash refund value on containers for nonalcoholic beverages and that the trial court erred in upholding those provisions of the ordinance.
The decree of the trial court will therefore be reversed and a final decree will be entered here in favor of the appellants.
Reversed and final decree.
NOTES
[1] Pepsi-Cola Bottling Co. of Washington, D.C.; R.C.  Nehi Bottling Co. of Washington, D.C.; Washington Seven-Up Bottling, Inc.; Canada Dry Potomac Corp.; Washington Coca-Cola Bottling Co., Inc.; and Rock Creek Ginger Ale Co., Inc.
[2] Acts 1978, c. 765, at 1289 provides:

Be it enacted by the General Assembly of Virginia:
1. That the Code of Virginia is amended by adding in Chapter 19 of Title 10 a section numbered 10-213.1 as follows:
§ 10-213.1. Preemption of certain local ordinances.  The provisions of this chapter shall supersede and preempt any local ordinance which attempts to regulate the size or type of any container or package containing food or beverage or which requires a deposit on a disposable container or package.
2. That this act shall not affect the validity of any local ordinance adopted and in litigation as of March four, nineteen hundred seventy-eight or any adjudication thereon. (Emphasis in original.)
[3] House J.Res. 174 resolved that legislation concerning containers should be uniform throughout the state and that local governing bodies should not enact ordinances contrary to this policy of uniformity.
[4] Since House J.Res. 174 contains a clause similar to Acts 1978, c. 765, cl. 2, we also refrain from considering it in reaching our decision.
[5] Senate Journal (1972) at 28, 91 (S.B. No. 12) and 60, 441 (S.B. No. 60).
[6] See, e. g., House Journal (1974) at 479 (H.B.No. 958); Senate Journal (1974) at 365 (S.B. No. 395); House Journal (1975) at 12 (H.B.No. 1017); House Journal (1976) at 556, 1774 (H.B.No. 1074).
[7] See, e. g., Senate Journal (1973) at 47 (S.B. No. 670); House Journal (1974) at 484 (H.B.No. 997); Senate Journal (1974) at 133 (S.B. No. 174); House Journal (1976) at 579 (H.B.No. 1227); Senate Journal (1976) at 119, 1542 (S.B. No. 72), at 137, 1542 (S.B. No. 132), and at 201, 1542 (S.B. No. 203); Senate Journal (1977) at 1536 (S.B. Nos. 72, 132, 203).
[8] House Journal (1971) at 59-60, 286-89 (H.B.No. 69); House Journal (1976) at 736-37 (H.B.No. 52); Senate Journal (1976) at 96 (S.B. No. 19).