## Richmond

### BROWNING-FERRIS, INC.

### V.

### COMMONWEALTH OF VIRGINIA

March 11, 1983.

Record No. 820681.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson, and Russell, JJ.

* Justice Thompson prepared and the court adopted the opinion in this case prior to the effective date of his retirement on March 2, 1983.

*Robert W. Wooldridge, Jr. (Terrence Ney; Elizabeth Land Lewis; Boothe, Prichard & Dudley*, on brief), for appellant.

*Jeffrey A. Spencer, Assistant Attorney General (Gerald L. Baliles, Attorney General; Walter A. McFarlane, Deputy Attorney General*, on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

The sole question involved in this appeal is whether the vehicles operated by Browning-Ferris, Inc. (BFI), in transporting its customers' waste materials (garbage, debris, refuse, and trash) to landfills for disposal are "for hire" vehicles within the meaning of Code §§ 46.1-1(35) and -160. In a traffic-infraction prosecution, the trial court ruled in the affirmative and convicted the defendant. We agree with the ruling and affirm its judgment.

BFI is a corporation engaged in the business of providing waste collection and disposal services by contract with its customers. It supplies the customers with special containers for temporary stor-

age of the waste material. On demand, BFI removes the contents of the container, either by dumping the waste into a truck or by transporting the container by truck over public highways to a landfill. The customer agrees in the contract that "[a]ll title to the solid waste shall be vested in [BFI] when such waste has been loaded into Company's trucks." BFI bases its service charges upon the quantity of material, frequency of disposal, and rental for the container. It also pays a required fee to the landfill for disposal of the wastes.

On the occasion in question, a state trooper stopped a BFI truck in Loudoun County. The vehicle contained industrial wastes being transported from the customers' premises to the landfill and had a gross weight in excess of 18,000 pounds. It did not display "for hire" license plates.

BFI challenges the holding of the trial court, contending that (1) waste is not property; (2) even if waste is property, it belongs to BFI and therefore BFI cannot be charged a license tax for transporting its own property; and (3) the statute in inapplicable because BFI's primary business is not transportation.

### I. Is Industrial Waste "Property" Within the Meaning of Code § 46.1-1(35)?

█ Our task is the proper interpretation of Code § 46.1-1(35), the relevant portion of which states:

> The terms operation . . . for hire . . . as a property carrier for compensation . . . wherever used in this title, mean any owner or operator of any motor vehicle, . . . operating over the highways of this State who accepts or receives compensation for the service, directly or indirectly . . . .

BFI contends that the industrial waste which it was transporting at the time of the alleged infraction was not property since it had no economic value. We decline to adopt that interpretation.

One of the definitions of property as found in *Webster's Third New International Dictionary* 1818 (1981) states that property is "something that is or may be owned or possessed." We endorse the reasoning of the Supreme Court of South Dakota in the case of *Northern Hills Sanitation, Inc.* v. *Cossart*, 264 N.W.2d 711, 713 (S.D. 1978):

Although it is true that garbage has been held not to be goods or personal property within the meaning of constitutional provisions and statutes governing common carriers, see, *e.g., Visco v. State,* 95 Ariz. 154, 388 P.2d 155; *Arizona Service Co.* v. *Arizona Corporation Commission,* 2 Ariz. App. 563, 410 P.2d 681; *Fairchild v. United Service Corp.,* 52 N.M. 289, 197 P.2d 875, other courts have reached a contrary result. *See, e.g., Masgai v. Public Service Commission of Pennsylvania,* 124 Pa. Super. 370, 188 A. 599; *Waste Control Systems, Inc.* v. *State,* 114 N.H. 21, 314 A.2d 659. Whatever definition solid waste or garbage might be given for other purposes, we think that consistent with our holding in *Lien* v. *Rowe, supra,* the solid waste transported by appellant over the highways of this state must be deemed to be property within the meaning of our motor carrier compensation statutes in order that the purpose of those statutes might be effectuated. As far as the wear and tear on our highways is concerned, it would seem to matter little whether a motor vehicle is carrying twenty tons of garbage or twenty tons of caviar.

As a practical matter, we are considering compensatory user fees exacted as license taxes for the privilege of operating motor vehicles over the public highways. *Commonwealth* v. *Smith,* 193 Va. 1, 68 S.E.2d 132 (1951). The fee becomes part of a fund used for construction, reconstruction, and maintenance of the state highway system. Code § 46.1-167. In this particular instance, we are concerned with a physical mass of 30 cubic feet transported over a thoroughfare owned and maintained for public use, and we have no hesitancy in concluding that, regardless of its economic value, this is property within the purview of Code § 46.1-1(35).

## II.  *Ownership of the Solid Waste.*

■■■  BFI points to the service agreement which transfers ownership of the solid waste to BFI once it has been loaded into BFI's truck. From that BFI argues that transportation for hire could not involve carriage of one's own property. Admitting that there is no Virginia precedent on this point, BFI cites *Weller* v. *Kolb's Bakery & Dairy,* 176 Md. 191, 4 A.2d 130 (1939); *Murphy* v. *Standard Oil Co. of Indiana,* 49 S.D. 197, 207 N.W. 92 (1926); and *City of Sioux Falls* v. *Collins,* 43 S.D. 311, 178

N.W. 950 (1920). BFI's argument is based upon concepts of property ownership which we do not believe are controlling in this context.

BFI contracts to take possession of solid waste on the premises of its customers and dispose of it by transportation over public highways to sites where it can be economically destroyed. The critical factor in this operation is the service performed in collecting and disposing of the waste, not the ownership of the debris. BFI "receives compensation for the service" only because it exercises the privilege of using the public highways, and part of that compensation is fairly attributable to that use.

In support of the trial court's ruling, the Commonwealth relies upon two opinions of the Attorney General, the pertinent parts of which appear in the margin.* The first was published April 8, 1966, the second 14 years later. Since there have been no corrective amendments to the statute as thus construed, we conclude that the General Assembly approves the Attorney General's construction.

The legislature is presumed to have had knowledge of the Attorney General's interpretation of the statutes, and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view. See *Albemarle Co.* v.

---

* In *Report of the Attorney General* 1965-66, at page 192, the Attorney General stated:
Under the given facts, the person operating the business receives compensation for the service of collecting, removing and disposing of trash and garbage for various governmental units and individuals. He uses his trucks for the purpose of collecting and disposing of the trash and garbage. So long as motor vehicles are used for such purposes, it is obvious that a portion of the compensation received is for such use. Considering the other named elements of the contract under which the service is performed and the nature of the transaction as a whole, the fact that the contract provides that the trash and garbage becomes the property of the person who removes and disposes of it does not appear to alter the situation. The net result is the acceptance or receipt of compensation for the services of the motor vehicles.

In *Report of the Attorney General* 1979-80, at page 259, the Attorney General stated:
The essential service which this company contracts to perform, therefore, is solid waste collection and removal by truck over the highways of the Commonwealth. That the waste is owned by the company while being transported does not change the fact that the company receives compensation for transporting the property. Accordingly, I am of the opinion that the company in question operates for rent or for hire within the meaning of § 46.1-1(35), and your question is therefore answered in the affirmative. A similar view was expressed by my predecessor in an Opinion . . . dated April 8, 1966, and found in Report of the Attorney General (1965-1966) at 192.

*Marshall, Clerk,* 215 Va. 756, 762, 214 S.E.2d 146, 150 (1975) (acquiescence for a period of seven years).

*Deal* v. *Commonwealth,* 224 Va. 618, 622, 299 S.E.2d 346, 348 (1983).

We, therefore, hold that the ownership of the economic waste is not controlling and that BFI's service is an operation "for hire" within the intendment of Code § 46.1-1(35).

### III. *Transportation Is Incidental Business of BFI*

Lastly, BFI argues that collection is its primary business and that transportation is merely incidental thereto. Accordingly, it insists that it is exempt from the license fee, citing various rulings of the Interstate Commerce Commission.

The Attorney General responds that the Interstate Commerce Commission is a regulatory body whose function does not concern the levy of fees for the maintenance of public roads, and, hence, that its rulings are inapposite. We agree.

Our statute makes no distinction between primary and secondary operations for hire, and we decline to engraft such a distinction upon it.

Therefore, we will affirm the judgment of the trial court.

*Affirmed.*