### Richmond

SCHOOL BOARD OF AMHERST COUNTY

V.

J. DANIEL BURLEY, ET AL.

April 29, 1983.

Record No. 810097.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, Russell, JJ., and Harrison, Retired Justice.

*J. Michael Gamble (Pendleton & Gamble,* on briefs), for appellant.
*J. Frank Shepherd* for appellees.

STEPHENSON, J., delivered the opinion of the Court.

In April, 1980, J. Daniel and Mattie Burley filed suit against the School Board of Amherst County. They alleged a contract existed between the parties for the sale of certain real estate and asked the trial court to order the Board to specifically perform the contract. The School Board asserted, among other defenses, that the contract was not in writing and therefore was unenforceable under Code §§ 11-2(6) (the Statute of Frauds) and 22-150.* The trial court ruled the Board was estopped to interpose these defenses and decreed specific performance.

The Burley property is located between two tracts owned by Timothy Whitehead. A reciprocal negative easement exists between the Burley parcel and one of the Whitehead tracts, restricting their use to residential purposes.

Whitehead offered to sell his tracts to the School Board, and the Board requested the County Board of Supervisors to appropri-

---

* At the time, Code § 22-150 read in part as follows:

*§ 22-150. Title to real estate for public uses to be approved by attorney at law.*
— Whenever it shall be necessary for any county, city or town school board, having authority for the purpose, to purchase real estate, or acquire title thereto for public uses, the contract therefor shall be in writing. . . .

This requirement was deleted when Title 22 was recodified as Title 22.1 in 1980. Acts 1980, c. 559.

ate money for the purchase. The Burleys objected to the sale, stating the School Board's use of the land would violate the residential restriction. Consequently, the Supervisors suggested that the School Board and the Burleys endeavor to resolve the issue.

On December 12, 1979, the parties met and discussed the problem. Although they continued to voice objection to the Whitehead purchase, the Burleys indicated a willingness to sell their property to the Board. At this meeting, the School Board resolved to pursue the requested appropriation for the Whitehead land and, additionally, to request funds from the Supervisors to either purchase the Burley property or to compensate them for the violation of the restrictive covenant.

The resolution was presented to the Supervisors on December 18, 1979. In an executive session, the Supervisors and the Burleys agreed on a purchase price of $82,500. Thereafter, members of the School Board were called into the executive session and informed of the agreed price. Although no formal action was taken on the matter by the School Board, the members, acting individually, appeared to give their approval. When the Board of Supervisors returned to its open meeting, it appropriated money to be used for the purchase of the Whitehead and Burley properties.

In January, 1980, newly elected Supervisors took office. The Board of Supervisors attempted to block both purchases. After receiving a legal opinion from the Attorney General, the School Board concluded the purchase of the Whitehead land, but did not carry out the agreement to purchase the Burley tract.

The trial court found a contract of sale existed between the School Board and the Burleys. It further found the Burleys had relied upon the contract to their detriment, since they had withdrawn their opposition to the Whitehead purchase. The court therefore held the School Board was estopped from claiming that the contract was invalid because it was not in writing.

Section 22-150 provided that when a school board purchased real estate "the contract therefor shall be in writing. . . ." This requirement was more stringent than the Statute of Frauds, which merely requires a memorandum signed by the party to be charged. Code § 11-2(6). A school board may exercise only the power granted it by the General Assembly. *Commonwealth* v. *Arlington County Bd.*, 217 Va. 558, 232 S.E.2d 30 (1977); *Kellam* v. *School Board*, 202 Va. 252, 117 S.E.2d 96 (1960). In this case, the Board's attempt to purchase property without following the

mandate of Code § 22-150 was *ultra vires*, and the purported contract was void *ab initio*.

The trial court ruled that the Board, by its conduct, was estopped from interposing Code § 22-150 as a defense. However, even assuming that all the elements necessary to prove an estoppel were present, see *T. . . v. T. . .*, 216 Va. 867, 224 S.E.2d 148 (1976), the trial court erred in its ruling. The doctrine of estoppel cannot be imposed against a governmental entity when the contract is *ultra vires* and therefore void. *Deal* v. *Commonwealth*, 224 Va. 618, 623, 299 S.E.2d 346, 348-49 (1983); *Bristol* v. *Dominion Nat. Bank*, 153 Va. 71, 81, 149 S.E. 632, 635 (1929); *Richmond R. Co.* v. *Richmond, Etc.*, 145 Va. 266, 299, 133 S.E. 888, 898 (1926).

In *Deal*, the Commonwealth signed a contract containing an arbitration clause and thereafter actually submitted to arbitration. 224 Va. at 620, 299 S.E.2d at 347. When the plaintiff attempted to reduce the arbitration award to judgment, the Commonwealth asserted it did not have the power to enter into an arbitration agreement. We agreed with the Commonwealth's argument and further held it was not estopped from denying the validity of the contract, even though its agents had entered into it and had participated in arbitration. *Id.* at 623, 299 S.E.2d at 348-49. We thus held the Commonwealth was not bound by the contract.

Accordingly, we will reverse the judgment of the trial court and enter final judgment for the School Board.

*Reversed and final judgment.*