## COUNTY BOARD OF ARLINGTON COUNTY

### V.

## LARRY J. BROWN, COUNTY MANAGER OF ARLINGTON COUNTY

Record No. 841641

Decided April 26, 1985, at Richmond

Present: All the Justices

*Charles G. Flinn, County Attorney,* for petitioner.
*Dexter S. Odin (Robert K. Richardson; Odin, Feldman & Pittleman, P.C.,* on brief), for respondent.

COMPTON, J., delivered the opinion of the Court.

In this mandamus proceeding, the dispositive question is whether a county has the power to lease to a private developer publicly owned land currently used for public purposes.

The facts are undisputed. Arlington County owns 6.4 acres of undeveloped land adjacent to its existing courthouse, jail, and County office complex. Most of the land was acquired over the years for public uses in connection with the courthouse. The entire 6.4 acres presently is used for parking of County-owned vehicles and vehicles of County employees.

In 1979, the County inaugurated a study to determine the proper future use of this land. The County desired the parcel to be developed to accommodate intensive commercial and residential development while at the same time providing maximum return to the County treasury for the use of the land. The County determined that a mixture of high density office, hotel, retail, and residential uses would be appropriate, consistent with both the comprehensive plan and the zoning ordinance.

During the next several years, County officials, working with representatives of the public, formulated plans for possible development of the site. Finally, and after full citizen participation, a selection panel recommended in October of 1982 that a proposal from Charles E. Smith Companies/Artery Organization, a private developer, be accepted. The Smith-Artery interests have extensive experience in the construction of apartments, condominiums, ho-

tels, shopping centers, and garages in the Northern Virginia and Washington, D.C. area.

Negotiations with the developer began in December 1982. The County staff was concerned with the future location of County office space, whether to sell or lease the subject parcel for the development, and the amount of remuneration the County should receive for the interest to be conveyed. A strong preference emerged for leasing much of the land, especially the land devoted to office use. One of the main reasons for the preference was the intention to keep the property under public control to assure its availability for long-term public use.

In July of 1983, the County completed a study of future space requirements for its governmental operations in the courthouse area. Because this study revealed a need for new office space near the courthouse, the negotiators had to consider a requirement for increased square footage for County office space and choose a location for the space. Following advice of consultants, and with continuous citizen participation, the negotiators presented a financial arrangement to the County Board with which Smith-Artery would agree. This proposal was detailed in a letter of intent, which was accepted by the County Board in August of 1984.

A portion of the transaction contemplates a sale of land for the residential and hotel portion of the development. Pertinent to this dispute, however, is that part of the proposal dealing with lease of office space.

According to the letter of intent, the land for the office buildings, and related retail space, will be let to Smith-Artery on a 75-year ground lease with a base rent and a percentage rent. At the end of the term, the improvements will revert to the County free of encumbrances. The County will receive as compensation for the land lease 50 percent of the net profit of the rental of the office space and retail space. The County will subordinate its right to receive payment of the land rent to the lien of the deed of trust which will secure Smith-Artery's construction loan and permanent loan for the improvements; the County will have no other obligation with respect to these loans. The County will have the right to cure any default by Smith-Artery and to terminate the land lease in the event of default. It is not disputed that the lease arrangement is financially advantageous to the County.

In addition, the County, as lessee, will lease no less than 140,000 square feet in the first office building to be constructed

for an initial period of 15 years with multiple 10-year renewal periods. The lease will not be subject to "annual appropriation." Rent will be due each month and will be for the prior month's occupancy. The County has the right to increase the amount of space it leases during the initial period of occupancy to 167,000 square feet. The County will receive a favorable rate for rental of the office space and a period of rent-free occupancy.

Following approval of the proposal, the County Board directed the County Manager to sign the letter of intent on behalf of the Board and to commence preparations to complete the transaction. The Manager refused to follow the Board's orders, believing certain questions should be determined judicially before the county proceeded further.

The Board filed this proceeding in October of 1984 against the Manager. The Board petitions this Court to issue a writ of mandamus which directs the Manager, acting in a ministerial capacity, to sign the letter of intent on behalf of the Board, to advertise the necessary public hearing, and to begin preparing the appropriate legal documents to carry out the provisions of the letter of intent. Responding, the Manager denies he has the duty or authority to carry out the Board's orders with regard to the proposed lease and asks that the Board's petition be denied.

Even though serious constitutional issues regarding the County's ability to lend its credit and to contract debt, Va. Const. art. X, § 10 and art. VII, § 10, are raised by the proposal, we do not reach those questions in this proceeding. Rather, the threshold issue raised by the County Manager is dispositive of the case. The Manager contends that the applicable statutes contain no express grant of power for the County to lease this property under these circumstances and that no such power can be fairly implied from the powers expressly conferred. We agree.

Virginia follows Dillon's Rule of strict construction and its corollary. The powers of county boards of supervisors are fixed by statute and are limited to those powers conferred expressly or by necessary implication. *Commonwealth* v. *County Board of Arlington County*, 217 Va. 558, 573-74, 232 S.E.2d 30, 40-41 (1977); *Board of Supervisors of Fairfax County* v. *Horne*, 216 Va. 113, 117, 215 S.E.2d 453, 455-56 (1975); *see Cupp* v. *Board of Supervisors of Fairfax County*, 227 Va. 580, 594, 318 S.E.2d 407, 414 (1984); *Tabler* v. *Board of Supervisors of Fairfax County*, 221 Va. 200, 202, 269 S.E.2d 358, 359 (1980).

■ The County Board relies on Code § 15.1-261.1 as one source of its power to lease the subject land. That statute provides, in pertinent part:

"The governing body of any county, in its discretion, may lease to any responsible person, firm or corporation any unused lands owned or held by such county for any lawful purpose provided such governing body shall first hold a public hearing . . . . The terms and provisions of any such lease shall be prescribed by the governing body, provided that any such lease shall contain a clause to the effect that at the termination of such lease it shall not be renewed if required for any of the purposes mentioned in § 15.1-258, and that upon termination, all improvements erected thereon shall revert to the county and shall be free from any encumbrance at the time of such reversion. . . ."

The Board argues the parcel in question is "unused," as that term is employed in the statute. It claims the tract is "underdeveloped" and that its use for parking "is inefficient and an underutilization because the land is appropriate for high density private development." The Board also claims that, at the time the lease to Smith-Artery would become effective, the County will have ceased using the land for parking in order to prepare the tract for construction, thus making the land "unused," even if it be determined it is not presently "unused" because parking is allowed. We disagree.

■ We construe the term "unused lands" according to its plain meaning. Land that is "unused" is vacant, surplus, spare, and unemployed; it is not necessarily "underdeveloped" or "underutilized." "Unused land" may be raw land for which there is no current county need or it may be land improved with buildings, which are not currently, actively employed by the county. The parcel in question qualifies under none of the foregoing concepts. This land was acquired by the County for public purposes. It has been, and is, employed to provide parking facilities for those connected with the courthouse complex, according to the record. The parcel has a substantive, functional use and in no sense of the statutory term is it "unused." And we will not presume the General Assembly intended this Court to approve a subterfuge by holding, as the Board suggests, that land used for a legitimate public purpose

suddenly becomes "unused," and susceptible to being leased, when the existing use must be stopped so construction can begin for a commercial development.

Alternatively, the Board relies on Code § 15.1-262 (Cum. Supp. 1984) as a source of power to lease the subject parcel. As pertinent to this controversy, that statute provides:

> "The governing body of the county shall have power to sell, at public or private sale, or exchange and convey the real property, . . . of the county; to purchase any real estate as may be necessary for the erection of all necessary county buildings; to provide a suitable farm as a place of general reception for the poor of the county; provided that no such land shall be disposed of unless and until the governing body has held a public hearing thereon concerning such disposal thereof.
>
> "The governing body of the county shall have the power to acquire by purchase, gift, devise, bequest, grant, lease, or otherwise title to, or any interests or rights of less than fee-simple title in, any real property within its jurisdiction, for any public purposes, including, but not limited to, those purposes set forth elsewhere in this chapter."

The Board argues that the right to sell, exchange and convey under the statute includes the right to lease. We do not agree. Under the grant of power found in § 15.1-262, a county may sell or exchange and convey realty, may purchase real estate necessary for erection of public buildings, and may *acquire* less than fee simple title in real property. Nowhere in the statute is the power given to counties to *grant* less than fee simple title to county land. In contrast, under Code § 15.1-847 there is a specific grant of power to municipal corporations to lease. That statute provides:

> "A municipal corporation may control and regulate the use and management of all of its property, real and personal, within and without the municipal corporation; and may sell, lease, mortgage, pledge or dispose of such property, . . . subject to such limitations as may be imposed by the Constitution of Virginia or general law."

Thus, as the County Manager contends, the grant to municipal corporations of a general power to lease government property to others, when compared to a restrictive grant to counties to deal with their property, demonstrates a clear legislative intent to withhold from counties any power to lease not otherwise specifically granted. *See Town of Christiansburg* v. *Montgomery County*, 216 Va. 654, 658, 222 S.E.2d 513, 516 (1976).

■ The Board refers to several opinions of Attorneys General which state, under various fact situations, that the power to sell under § 15.1-262, and its predecessors, includes the power to lease. *See* Reports of the Attorney General (1982-83), at 35-36, n.2; (1967-68), at 66; (1958-59), at 59; and (1957-58), at 70. Citing *Browning-Ferris* v. *Commonwealth*, 225 Va. 157, 161-62, 300 S.E.2d 603, 605-06 (1983), the Board argues that "[t]hese interpretations by the Attorney General should be given great weight because the legislature has done nothing to contradict them." Even though such interpretations are entitled to due consideration, they are, of course, not binding on us. *Albemarle County* v. *Marshall*, 215 Va. 756, 762, 214 S.E.2d 146, 150 (1975). Such interpretations cannot be permitted to override the clear statutory mandates evident here.

Consequently, the petition for a writ of mandamus will be denied.

*Writ denied.*

RUSSELL, J., dissenting.

In my view, Code § 15.1-262, by necessary implication, affords the County ample authority to convey a leasehold interest in lands which the County owns in fee simple. It provides: "The governing body of the county shall have power to sell . . . and convey the real property of the county . . . ." There is no limitation on this grant of power, and it therefore extends to the right to convey a fee simple estate.

An estate in fee simple is the largest estate in lands recognized by the law. It consists of the aggregate of all the rights, powers, privileges and immunities (sometimes called the "entire bundle of rights") pertaining to the land. The grantor of such an estate can make no further disposition of the property, because he has already granted the whole and entire interest that it was possible for

him to have, and consequently nothing remains in him. I Minor on Real Property § 145 (F. Ribble 2d ed. 1928). *See also Carter* v. *Tyler*, 5 Va. (1 Call) 165, 186 (1797).

The power to convey the entire bundle of rights includes, by necessary implication, the power to convey any lesser segment, or group of segments, of the bundle. One of the hallmarks of a fee simple estate is the unrestricted alienability of the bundle of rights of which it consists. *See Ky. Dept. of Revenue* v. *Hobart Mfg. Co.*, 549 S.W.2d 297, 299 (Ky. 1977). Can it be seriously contended that a local governing body lacks the power to grant an easement over lands which the county owns in fee simple?

Because the power to convey the whole includes by necessary implication the power to convey the parts, the power to convey a leasehold is included within the power to convey a fee. Because the power to convey a fee has been expressly granted by the legislature to the County Board, it may exercise the power to convey a leasehold without offending Dillon's Rule. That rule, to which we adhere, provides that local public bodies may exercise, in addition to those powers expressly conferred by the legislature, the further powers which arise by necessary implication from those expressly conferred. *Commonwealth* v. *Arlington County Bd.*, 217 Va. 558, 572, 232 S.E.2d 30, 39 (1977).

Accordingly, I respectfully dissent from the conclusion reached with respect to the threshold issue which the majority deems dispositive of the case and would proceed to a consideration of the constitutional questions raised by the County Manager.