## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Stallings et al.

v.

Wall

May 16, 1985

Case No. (Law) 526

By JUDGE HENRY L. LAM

This matter was argued on March 13, 1985. At that time counsel stipulated as to the facts, and the proceedings are now before me on the motions for Summary Judgment.

At the conclusion of the hearing, I informed counsel that I would study this case and report my conclusion. Having now completed my study, I report to you as follows:

1) That § 38-6 of the Virginia Beach Code pertains to the safety, health, peace and good order of its citizens and hence is a valid subject for legislation pursuant to § 15.1-839 of the Code.

2) That § 38-6 is not inherently invalid on its face; that there is a presumption in law that it is valid, and this presumption of validity has not been rebutted.

3) That the "Dillon Rule" does not invalidate this ordinance.

4) That with the passage of § 15.1-525 of the Code, the state enacted legislation on the subject of the licensing of "handguns." Having done so, it is a matter on which the state "has spoken." However, I find it did not "speak" in such fashion as to be exclusive on the subject.

5) That § 15.1-525, pertaining to Arlington, does not conflict with nor prohibit the right of Virginia Beach to enact a similar ordinance.

The primary argument urged by the plaintiffs relies on the Dillon Rule. This Rule is set forth in the case of *Richmond* v. *County Board*, 199 Va. 679, 684 (1958). Therein the Court said:

> It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others; first, those granted in express words; second, those necessarily or fairly implied in or incidental to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied.

Although plaintiff's counsel has relied heavily on the Dillon Rule, I find such rule difficult to apply in the instant case. In our cities, we live in a heavily structured society. While preserving individual freedom as best we can, the dense population of our urban areas has caused the adoption of many additional laws deemed necessary to adjust for crowded living conditions.

Section 15.1-839 is the umbrella statute under which cities regulate their citizens. The terms of the statute are very broad and grant great latitude to the city. Such code section provides the authority for the enactment of § 38-6.

Zoning ordinances provide a good example of a city-oriented issue. Zoning finds little application in our rural areas even today, but as political subdivisions become urban in nature, laws regulating the use of property have followed almost automatically. Thus, I conclude that the plaintiff's reliance on the Dillon Rule is misplaced in this case.

Fundamental to any discussion of validity is the presumption that favors the validity of municipal ordinances. The court in the case of *Kisley* v. *Falls Church*, 212 Va. 693, 697 (1972), stated that this presumption governs "unless it is overcome by unreasonableness apparent

on the face of the ordinance or by extrinsic evidence which clearly establishes the unreasonableness."

Here such unreasonableness is not apparent on its face. This presumption of its validity will control unless the ordinance be otherwise invalid; that is, unless it is forbidden by the Dillon Rule, or otherwise by state legislation that has preempted the subject.

If valid on its face, if not prohibited by the Dillon Rule, then has it been preempted by statute? At present, the sole state legislation is § 15.1-525 of the Code. Counsel agreed that this legislation, when passed, was to apply only to Arlington County, but since, by an increase in population, it now also applies to Fairfax County. This legislation was enacted in 1944. Subsequently, legislation on the subject matter was initiated in the General Assembly in 1976 and in 1985.

In 1976, House Bill 766 sought to require, statewide, that any person purchasing a handgun must apply for a permit to do so. This bill failed to pass.

In 1985, House Bill 1771 was introduced. This sought, statewide, to prevent any city or county from regulating the purchase of firearms. This bill also failed to pass.

Thus, two bills at opposite ends of the spectrum of "control," were initiated, but both failed to pass.

In the case of *Tabler* v. *Fairfax*, 221 Va. 200 (1980), at page 202, the Court stated that in determining legislative intent "We have looked both to legislation adopted and bills rejected by the General Assembly."

Try as I may, I am unable to draw any conclusions as to "intent" from the rejection of these bills.

By having enacted Chapter 297 (§ 15.1-525), we can conclude that the state does recognize such "licensing." Having considered the subject, the legislature could have denied such right to all other political subdivisions if it chose to do so.

In *King* v. *County of Arlington*, 195 Va. 1084, 1088 (1954), the Court stated: "To what extent a local governing body may regulate or control a subject which the state has undertaken to regulate or control is a matter upon which there is a diversity of judicial opinion." Further, at page 1090, it said: "It is, of course, fundamental that local ordinances must conform to and not be in conflict with the public policy of the state as embodied in its statutes." And further, "The mere fact that the state, in the exercise of the police power, has made

certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand."

So, in Virginia, action was taken to regulate the purchase of handguns. I do not find that a similar ordinance from Virginia Beach conflicts with the rights of Arlington or its citizens.

Also, by enacting § 15.1-525, the legislature has pointed to the public policy of the state and determined that the regulation of handguns is an appropriate field for legislation.

In *King v. County of Arlington, supra* at 1091, the Court stated: "It is well settled that a local legislative body, in the exercise of its police power, may forbid the doing of an act where state legislation is silent on the subject. If either is silent where the other speaks, there can be no conflict between them."

If it is right to legislate on this subject at all, then the Arlington statute is an argument in favor of such legislation. And from reading this sole statute on the subject, I submit its language and its coverage to be "silent" in prohibiting a city from enacting such legislation.

Plaintiffs, in their second brief, argue that with Section 15.1-525 having been enacted, it is thus a matter on which the state has spoken. Having spoken, the state is not "silent" on the subject. And with this I agree.

Plaintiffs further argue that the state, having granted legislative rights to counties having a population density of more than 1,000 a square mile, prohibits such right to counties having a lesser population. And with this proposition, as stated, I generally agree.

But, I do not conclude that this prohibition to counties of a certain population does, in and of itself, prohibit such right to a city.

I acknowledge that this opinion is in conflict with the opinion of the Attorney General. I have great respect for the office and for the opinion of the Attorney General, but I respectfully differ with his opinion on this issue, for the reasons expressed.

By reason of the foregoing, I find the ordinance valid.

*Appendix*

**Sec. 38-6. Permit prerequisite to purchase of certain weapons.**

(a) No licensed importer, licensed manufacturer or licensed dealer shall sell, lease, rent, give or otherwise furnish to any person within the city any pistol, revolver or similar type of handgun unless a permit granted by the chief of police, or such other officer of the police department as may be designated in writing by the chief of police, is presented authorizing the holder of such permit to acquire such weapon. This section shall not apply to the rental of pistols, revolvers or other handguns by licensed importers, licensed manufacturers or licensed dealers that are to be used solely on the premises of said importers, manufacturers or dealers. This section shall not apply to transactions between licensed importers, licensed manufacturers or licensed dealers. This section shall not apply to sales or trade-ins of pistols, revolvers or other handguns from individuals to licensed importers, licensed manufacturers or licensed dealers, or to sales, trades or any transfers of pistols, revolvers or other handguns between individuals. Such permit shall be surrendered to the licensed importer, licensed manufacturer or licensed dealer furnishing such weapon, who shall preserve it for inspection, upon request, by the police of the city.

(1) The term "licensed importer" shall mean any person engaged in the business of importing or bringing firearms into the United States for the purpose of sale or distribution who is licensed under either the provisions of title 18 USC section 921 et seq., or the provisions of this Code.

(2) The term "licensed manufacturer" shall mean any person engaged in the manufacturing of firearms for purposes of sale or distribution who is licensed under either the provisions of title 18 USC section 921 et seq., or the provisions of this Code.

(3) The term "licensed dealer" shall mean:

a.    Any person engaged in the business of selling firearms at wholesale or retail,

b.    Any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks or trigger mechanisms to firearms, or

c.    Any person who is a pawnbroker, and who is licensed under either the provisions of title 18 USC section 921 et seq., or the provisions of this Code.

(4)    The term "pawnbroker" shall mean any person whose business or occupation includes the taking or receiving, by way of pledge or pawn, of any firearm as security for the payment or repayment of money.

(b) No permit required by subsection (a) above shall be issued to:

(1)    Any person under the age of twenty-one (21) years;
(2)    Any convicted felon;
(3)    Any person under indictment or information for a felony;
(4)    Any person who at the time of application is charged with a crime involving violence;
(5)    Any person who has been found not guilty of a felony on the basis of insanity;
(6)    Any person who is a fugitive from justice;
(7)    Any person who presently is an unlawful user of, or addicted to, marijuana, a depressant, stimulant or narcotic drug; and
(8)    Any person who has been committed to a mental institution.

(c) Every applicant for a permit required by this section shall pay to the city treasurer an application fee of five dollars ($5.00). This fee shall not be charged to sworn police officers of the city.

(d) A violation of this section shall constitute a Class 1 misdemeanor. (Code 1965, § 38-5; Ord. No. 1324, 9-13-82; Ord. No. 1429, 1-23-84).