**W.M. SCHLOSSER COMPANY, INCORPORATED, Plaintiff–Appellant,**

v.

**SCHOOL BOARD OF FAIRFAX COUNTY, VIRGINIA, Defendant–Appellee.**

No. 92–1008.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 29, 1992.

Decided Nov. 18, 1992.

As Amended Jan. 13, 1993.

Herman Martin Braude, Braude & Margulies, P.C., Washington, D.C., argued (Roger C. Jones, on brief), for plaintiff-appellant.

Thomas John Cawley, Hunton & Williams, Fairfax, Va., argued (Stuart A. Raphael, on brief), for defendant-appellee.

Before PHILLIPS, NIEMEYER, and LUTTIG, Circuit Judges.

OPINION

LUTTIG, Circuit Judge:

The W.M. Schlosser Company appeals an order of the district court denying its motions to compel arbitration and to appoint an arbitrator to resolve its construction contract dispute with the School Board of Fairfax County, Virginia. We conclude that regardless of whether the School Board agreed to arbitrate the dispute in question, it lacked the legal authority to arbitrate under the laws of the Commonwealth of Virginia. We therefore affirm.

I.

The relevant facts necessary to the disposition of this appeal are not in dispute. On June 10, 1988, the W.M. Schlosser Company [Schlosser], a Maryland corporation, entered into a contract with the Fairfax County School Board [the School Board] for the performance of renovation construction at the Falls Church High School. The con-

tract comprised a number of documents, the most important of which were two standard construction forms prepared by the American Institute of Architects, the AIA Standard Agreement and the AIA General Conditions, and a set of Supplementary Conditions that included extensive modifications to the terms of the AIA standard forms. J.A. at 5–41.

The AIA General Conditions provide for the arbitration of claims arising under the contract. Article 2.2.7 of the General Conditions stipulates that all disputes between contractors and owners must first be referred to the project architect for an initial decision.[1] *Id.* at 14. Article 2.2.10 states that "[a]ny claim, dispute or other matter that has been referred to the Architect ... shall be subject to arbitration upon the written demand of either party." *Id.* Finally, Article 7.10, entitled "ARBITRATION," provides that all contract disputes shall be arbitrated in accordance with the Construction Industry Arbitration Rules of the AIA and outlines the arbitration process. *Id.* at 20. In the Supplementary Conditions portion of the contract, Schlosser and the School Board left Articles 2.2.7 and 2.2.10 unchanged. *Id.* at 27. They deleted Article 7.10 of the AIA General Conditions, however, in its entirety. *Id.* at 30.[2]

Prior to completion of the Falls Church High School project, Schlosser alleged that it had been delayed in the performance of its contract obligations by the School Board, and on August 3, 1990, it served the Board with a claim for damages in the amount of $1,152,941. Schlosser submitted a copy of the claim to the project architect for an initial adjudication, pursuant to Arti-

cle 2.2.7 of the General Conditions. *Id.* at 3. Several months later, the architect granted Schlosser a short extension of the time within which it was required to complete its work, but denied Schlosser's damages claim. *Id.* at 75–79.

On March 27, 1991, Schlosser presented the Board with a written demand for arbitration pursuant to Article 2.2.10 of the General Conditions. The following day, invoking the court's diversity jurisdiction, Schlosser moved in the district court to compel arbitration and to designate and appoint an arbitrator under the terms of the Federal Arbitration Act [FAA], 9 U.S.C. §§ 1 *et seq.* Schlosser's petition was referred to a federal magistrate who, after conducting a hearing, denied both of Schlosser's motions on the ground *inter alia* that the School Board lacked the authority to arbitrate under Virginia law and thus that any attempt by the Board to contract to arbitrate was unenforceable. J.A. at 103, 105.

Schlosser appealed the magistrate judge's decision to the district court.[3] The district court adopted the magistrate's recommendations, holding that the Board had no authority under Virginia law to arbitrate contract disputes. *Id.* at 125–26. This appeal followed.[4]

## II.

### A.

The question before the court is whether the School Board possesses the authority under the laws of the Commonwealth of Virginia to agree to arbitrate contractual disputes, for if it does not, then any such

---

1. Under Article 2.2.2 of the General Conditions, the project architect is the agent and representative of the owner, which in this case is the School Board. *Id.* at 14.

2. The director of design and construction services for the school system stated in his declaration that because "neither the [School Board] nor any of its agents has the authority to enter into arbitration agreements," "it is the custom and standing practice of Fairfax County Public Schools to eliminate standard form arbitration provisions contained in construction contracts." Hanton Decl., *Id.* at 70.

3. Schlosser initially appealed the magistrate's decision to this court. We dismissed the appeal for lack of jurisdiction. *W.M. Schlosser Co. v. Fairfax County Sch. Bd.,* No. 91–2515 (4th Cir. Aug. 2, 1991).

4. The district court also held that Schlosser and the Board had not agreed to arbitrate disputes arising out of their contract. Because we agree with the district court that the Board lacked the authority to arbitrate contract disputes, we need not and do not reach this question of contract interpretation.

agreement by the Board is unenforceable as *ultra vires* and the motion to compel arbitration therefore must be denied. *See Richmond Ry. Co. v. Richmond, Etc.*, 145 Va. 266, 299, 133 S.E. 888, 898 (1926) ("When the contract is once declared *ultra vires*, the fact that it is executed does not validate it, nor can it be ratified so as to make it the basis of suit or action, nor does the doctrine of estoppel apply."); *accord Richard L. Deal & Assocs., Inc. v. Commonwealth*, 224 Va. 618, 299 S.E.2d 346 (1983). The resolution of this question depends in turn upon application of the Dillon Rule, a rule of construction applicable in Virginia when determining the powers of local government: "There can be no question that Virginia long has followed, and still adheres to, the Dillon Rule of strict construction concerning the powers of local governing bodies." *Commonwealth v. County Bd.*, 217 Va. 558, 232 S.E.2d 30, 40 (1977).[5]

■ According to the Dillon Rule, local governing bodies such as counties, municipal corporations, and school boards "possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable."[6] *City of Richmond v. Confrere Club*, 239 Va. 77, 387 S.E.2d 471, 473 (1990) (citing cases); *County Bd. v. Brown*, 229 Va. 341, 329 S.E.2d 468, 470 (1985); *see also School Bd. v. Burley*, 225 Va. 376, 378, 302 S.E.2d 53, 55 (1983) ("A school board may exercise only the power granted it by the General Assembly."); *Kellam v. School Bd.*, 202 Va. 252, 117 S.E.2d 96, 98 (1960) (school boards "constitute public quasi corporations that exercise limited powers and functions of a public nature granted to them expressly or by

necessary implication, and none other"). The Rule is strictly construed and strictly enforced by the Virginia Supreme Court and the court does not liberally recognize governmental powers by implication. *See Brown*, 329 S.E.2d at 472 (power to lease realty cannot be implied from county's express power to sell or convey realty); *Commonwealth v. County Bd.*, 232 S.E.2d at 44 (power to bargain collectively cannot be implied from expressly granted powers of school boards to contract, hire employees, and set terms of employment). Significantly, "[i]f there is *any* reasonable doubt whether legislative power exists, that doubt *must* be resolved against the local governing body." *Confrere Club*, 387 S.E.2d at 473 (emphases added); *accord Stallings v. Wall*, 235 Va. 313, 316, 367 S.E.2d 496, 497 (1988).

### B.

■ Schlosser and the School Board agree that the state constitution does not expressly confer the power to arbitrate on Virginia school boards. Both parties also appear to agree that such a power cannot be considered "essential" or "indispensable" to the functioning of school boards. Therefore, if the power to agree to arbitrate is not expressly granted by statute or cannot be implied from a power explicitly conferred on school boards by the General Assembly, it does not exist.

Schlosser contends that the authority to agree to arbitrate is conferred in section 22.1–71 of the Virginia Code. That statute, which lists the corporate powers of the Commonwealth's school boards, provides that every

school board is ... vested with all the powers and charged with all the duties, obligations and responsibilities imposed

---

**5.** The Virginia Supreme Court first recognized the Rule—sometimes referred to as Dillon's Rule—in *Winchester v. Redmond*, 93 Va. 711, 25 S.E. 1001 (1896). The Rule takes its name from John F. Dillon, a federal circuit judge, chief justice of the Iowa Supreme Court, and noted law professor. *See infra* note 6.

**6.** *See Winchester*, 93 Va. at 714, 25 S.E. at 1002 (*quoting* 1 Dillon on Mun. Corp. § 89 (3d ed.)):

a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; Second, those necessarily or fairly implied in or incident to the powers expressly granted; Third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.

upon school boards by law and may sue, be sued, *contract*, be contracted with and, in accordance with the provisions of this title, purchase, take, hold, lease and convey school property....

Va.Code Ann. § 22.1–71 (Michie 1985) (emphasis added). Schlosser asserts that because the School Board has the "capacity to contract, [it] ... clearly has the power to enter into construction contracts containing arbitration provisions for the resolution of claims relating to the contract." Appellant's Br. at 10–11.[7]

It is not entirely clear whether Schlosser contends that the grant of the power to contract in section 22.1–71 is an express conferral of the power to agree to arbitrate or whether it contends that the power to arbitrate is implied in the power to contract. While neither contention is without force, ultimately each fails. Both the Public Procurement Act, Virginia Code §§ 11–35 *et seq.*, and section 15.1–508 of the Virginia Code confirm that the Virginia General Assembly does not consider the grant of a right to contract as expressly conferring a right to agree to arbitrate. It is also evident from these statutes, especially when they are construed strictly as required by the Dillon Rule, that we are not at liberty to imply such a right from the School Board's right to contract.

### C.

The Public Procurement Act, which governs the procurement of goods and services by counties, cities, towns, and school divisions from nongovernmental sources, sets forth procedures for resolving contract disputes between public entities and private contractors. Section 11–69 of the Act requires in relevant part that "[e]ach public body ... include in its contracts a procedure for consideration of contractual claims," and mandates that "[t]he decision of the public body shall be final and conclusive unless the contractor appeals...." Appeal of the final decision of the public body is limited to the "[invocation of] administrative procedures meeting the standards of § 11–71, if available, or in the alternative [to] institut[ion] [of] legal action [in the appropriate state court]." Va.Code Ann. § 11–69 D. (Michie 1985).[8] Thus, under section 11–69 D., contract disputes are to be decided by the public body itself, with appeal available only through the public body's administrative appeal procedure, if one exists, or to the courts. There is no provision for the dispute to be decided either initially or on appeal by an arbitrator. Indeed, the Act would appear to prohibit, by negative inference, decision by an arbitrator, who by definition is neither a representative of the public body nor a court of law.[9]

The fact that the General Assembly does not provide for arbitration in the very statute in which it prescribes the methods for public contract dispute resolution, we believe, is persuasive evidence that the Assembly does not regard the right to contract as expressly encompassing the right to agree to arbitrate. If the Assembly believed that the right to contract expressly subsumed such a right, arbitration almost certainly would be included in section

---

7. Alternatively, Schlosser contends that the authority to arbitrate may be implied from that portion of section 22.1–71 that grants school boards the power to sue and be sued. *Id.* at 13, 16. *See infra* note 10.

8. Section 11–71 allows, but does not require, public bodies to "establish an administrative procedure for hearing ... appeals from decisions on disputes arising during the performance of a contract." Apparently, the School Board has not adopted any such procedure.

9. Schlosser argues that the arbitration provision assertedly embodied in its contract with the School Board satisfies the requirement in sec-

tion 11–69 B. that "each public body shall include in its contracts a procedure for consideration of contractual claims." *See* Appellant's Br. at 14–15. We disagree. Section 11–69 B. clearly contemplates that the initial decision of any dispute will be rendered by the public body. *See* section 11–69 D. ("*The decision of the public body* shall be final and conclusive unless the contractor appeals....") (emphasis added). This requirement would appear to be satisfied, however, by the procedure outlined in Article 2.2.7 of the General Conditions, which provides that contract disputes are to be submitted initially to the project architect, given that the architect is the School Board's agent.

11–69 D. as one means by which contract disputes could be resolved.

Our conclusion that the General Assembly does not consider the right to contract as encompassing such a right is reinforced by the recent amendment of section 15.1–508 of the Virginia Code to provide expressly that counties may agree to arbitrate. In 1987, notwithstanding that county officials had long been authorized to contract by section 15.1–105 of the Virginia Code, the Assembly amended section 15.1–508 to include the following express right to agree to arbitrate: "The governing body of a county may enter into a written agreement to submit any existing controversy to arbitration *and may execute a contract which contains a provision to submit to arbitration any controversy thereafter arising.*" 1987 Va. Acts c. 483 (emphasis added). This amendment obviously would have been unnecessary if the legislature believed that the power to contract conferred in section 15.1–105 expressly included the power to arbitrate.

Finally, our conclusion that the power to contract does not by definition include the power to agree to arbitrate is consistent with decisions of the highest court in Virginia to have considered the question. *See Hanover County Sch. Bd. v. Gould*, (Hanover Cty.Cir.Ct. C–23–1984, Apr. 4, 1984) (holding, on state constitutional grounds, that school boards lack authority to arbitrate); *cf. Spotsylvania County Sch. Bd. v. Sherman Constr. Corp.*, 14 Va.Cir. 333 (1989) (implicitly assuming that right to agree to arbitrate not expressly conferred in right to contract); *Spotsylvania County Sch. Bd. v. R.E. Lee & Son, Inc.*, 5 Va.Cir. 48 (1982) (same). *But cf. McKennie v. Charlottesville & Albemarle Ry.*, 110 Va. 70, 78, 65 S.E. 503 (1909) (municipality's power to settle and compromise claims is "a necessary incident to its right to contract and to sue and be sued").

Together, the Public Procurement Act, the amendment to section 15.1–508, and the Virginia authority cited, are convincing evidence that school boards have not been expressly accorded the power to arbitrate through the power to contract in section 22.1–71.

### D.

Whether the power to arbitrate may be implied from the power to contract is another question, but one which we also believe must be answered in the negative. The Virginia Supreme Court has consistently rejected claims to implied power, absent compelling evidence that the General Assembly intended that such power be implicit in a power enumerated. *See Commonwealth v. County Bd.*, 232 S.E.2d at 42 ("In questions of implied power, the answer is to be found in legislative intent. To imply a particular power from a power expressly granted, it *must* be found that the legislature intended that the grant of the express also would confer the implied." (emphasis added)).

Schlosser has offered no evidence that the General Assembly intended for school boards to have the right to arbitrate, much less that it intended for such a right to be implied from the right to contract. Indeed, we believe that the legislature's amendment of section 15.1–508 to confer expressly upon counties the power to agree to arbitrate disputes, without a corresponding amendment to section 22.1–71 to accord school boards the same power, "demonstrates a clear legislative intent to withhold from" school boards such power.[10] *See Brown*, 329 S.E.2d at 472 (inferring legislative intent to withhold from counties the power to lease government property from fact that municipal corporations, but not counties, had been granted a general power to lease property); *Commonwealth v. County Bd.*, 232 S.E.2d at 42–44 (power to bargain collectively would not be implied

---

**10.** Prior to its amendment in 1987, section 15.1–508 only authorized counties to sue and be sued. A reasonable inference to be drawn from the fact that the legislature amended this statute so as to expressly permit counties to arbitrate is that the legislature did not believe that the pow-

er to arbitrate could be implied from the power to sue and be sued. Schlosser's alternative argument that the authority to arbitrate may be implied from section 22.1–71's express grant to school boards of the power to sue and be sued, *see supra* note 7, therefore, also fails.

from school boards' express powers to contract, hire employees, and set the terms of their employment where legislature had selectively enacted legislation authorizing collective bargaining but had consistently rejected general authorizing legislation).[11] This intention is underscored by the fact that the Public Procurement Act, as discussed *supra*, itself appears to forbid arbitration. *See Sherman Constr. Corp.*, 14 Va.Cir. at 339 ("[T]he contention that local school boards possess an implied power to submit construction contract disputes to binding arbitration clashes with the express provisions of the [Public Procurement] Act.").[12]

Even if we were not convinced that the Virginia legislature does not intend for school boards to have the right to arbitrate contractual disputes, we would still hold that such a right cannot be implied. At the very least, the amendment to section 15.1–508, the terms of the Public Procurement Act, and the recited caselaw collectively raise a reasonable doubt as to whether Virginia school boards possess the authority to execute contracts containing arbitration provisions. The Dillon Rule, as noted, requires that any reasonable doubt over whether a particular power exists be resolved against its existence.

Accordingly, because the Virginia General Assembly has not expressly conferred upon school boards the power to arbitrate, and because such a power cannot, under the Dillon Rule, be implied from the express power to contract, we hold that the School Board lacked the legal authority to agree to a binding arbitration provision in its contract with Schlosser. Any agreement to arbitrate, therefore, was unenforceable.

## III.

Schlosser, perhaps anticipating our holding, contends that the Federal Arbitration Act preempts application of the Dillon Rule.[13] It argues that any state law, such as the Dillon Rule, that prohibits enforcement of an arbitration agreement runs afoul of the FAA because the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), which requires that federal courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). This argument is unavailing.

The FAA does embody "a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). This policy is enunciated broadly in section 2 of the FAA, which provides in pertinent part that

[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added). And we have held that "[t]he language of [section 2] requires that states place *no greater* restrictions upon arbitration provisions than they place upon other contractual terms," and that generally, "if a state law *singles out* arbitration agreements and limits their enforceability it is preempted." *Saturn Distrib. Corp. v. Williams*, 905

11. *Cf. Tabler v. Board of Supervisors*, 221 Va. 200, 269 S.E.2d 358 (1980) (county's claimed power to require a minimum cash refund value on non-alcoholic beverage containers would not be implied where General Assembly had repeatedly rejected bills authorizing regulation of beverage containers); *see also Deal*, 299 S.E.2d at 347–49 (Commonwealth could not be bound to arbitration agreement by its agents absent specific legislation authorizing such agents to submit disputes to arbitration).

12. *R.E. Lee & Son, supra,* summarily concluded otherwise, but without citation to authority and without discussion of the limited avenues for dispute resolution authorized in the Public Procurement Act.

13. "This Constitution, and the Laws of the United States ... shall be the supreme Law of the Land ..." U.S. Const. Art. VI, cl. 2.

F.2d 719, 722 (4th Cir.) (emphases added; footnote omitted), *cert. denied,* — U.S. ——, 111 S.Ct. 516, 112 L.Ed.2d 527 (1990). In *Saturn,* for example, we invalidated a provision of the Virginia Motor Vehicle Dealer Licensing Act which prohibited automobile manufacturers and dealers from entering into agreements that included mandatory alternative dispute resolution provisions. We held that the provision was preempted by the FAA because it "single[d] out arbitration clauses and unreasonably burden[ed] the ability to form arbitration agreements." 905 F.2d at 723.

The Dillon Rule, however, does not single out and disproportionately burden arbitration provisions. It is a rule of general applicability that defines and invalidates all *ultra vires* acts of local governing bodies. Unlike the provision drawn into question in *Saturn,* the Rule is not "an idiosyncratic rule specific to arbitration agreements," but is instead "merely an unremarkable part of Virginia's general laws of contract formation." *Id.* at 725. As "a general rule of contract formation," *Supak & Sons Mfg. Co. v. Pervel Indus., Inc.,* 593 F.2d 135, 137 (4th Cir.1979), it constitutes a "ground[ ] as exist[s] at law or in equity for the revocation of any contract," within the meaning of 9 U.S.C. § 2. As such, it falls within the exception to section 2's general rule of enforceability of arbitration provisions, and therefore is not preempted by the FAA. *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987) (under the FAA, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally") (emphasis in original); *Supak,* 593 F.2d at 137 ("Section 2 [of the FAA] dictates the effect of a contractually agreed-upon arbitration provision, but it does not displace state law on the general principles governing formation of the contract itself.").

## IV.

For the reasons set forth, the appellant's motions to compel arbitration and to appoint an arbitrator were properly denied. The decision of the district court is therefore affirmed.

AFFIRMED.