929 F.2d 694
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Cynthia SKAMLA, Plaintiff-Appellant,
v.
LAM ENTERPRISES, INC., Carlos Abohasen, Defendants-Appellees.
 No. 89-2862.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1991.
Decided April 1, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, District Judge. (CA-89-352-A)
 Samuel Aaron Bogash, Washington, D.C., (Argued), for appellant; Thomas A. Mauro, Washington, D.C., on brief.
 Jack L. Gould, Fairfax, Va., for appellees.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant Cynthia Skamla (Skamla) worked for appellee LAM Enterprises, Inc. (LAM) and its president, appellee Carlos Abohasen (Abohasen), from October of 1984 to April of 1988.[1] Skamla was ostensibly fired for "lack of responsibility, tardiness, and complete absenteeism from work." Skamla, on the other hand, contending that her tenure at LAM was marked by sexual harassment of the vilest sort, filed a complaint in United States District Court for the Eastern District of Virginia, Alexandria Division, alleging a) sexual discrimination in violation of the Fairfax County Human Rights Ordinance (the Ordinance), b) wrongful discharge, c) assault and battery, d) intentional infliction of emotional distress, and e) invasion of privacy. LAM counterclaimed for attempted conspiracy to harm LAM in trade, business, or profession, and Abohasen counter-claimed individually for intentional infliction of emotional distress.
 
 
 2
 Prior to trial, Skamla's claims alleging violation of the Ordinance and invasion of privacy were dismissed. At the trial's conclusion, the jury declined to award relief to either party. Skamla appeals, claiming that the district court (Cacheris, J.) erred in dismissing her sexual discrimination claim and in declining to compel discovery.
 
 I.
 
 3
 Skamla is a 27 year-old female resident of Pennsylvania. LAM is a small Virginia corporation located in Fairfax County, Virginia. It is engaged primarily in the business of supplying new and used aircraft parts to foreign governments and militaries. It has been, at all times, too small a company to reach the fifteen employee threshold for protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17. Abohasen is president of LAM and is its principal stockholder.
 
 
 4
 Skamla alleged in her complaint and attempted to prove at trial that within one month of her employment at LAM, Abohasen began to make unwanted, sexually aggressive advances towards her, and that by the end of 1985, Abohasen was conditioning her employment upon her providing sexual favors and was becoming more physically intimidating.
 
 
 5
 By July of 1986, according to Skamla, her working relationship with Abohasen deteriorated rapidly and was marked by incidences in the office and on business trips of sexual advances sufficiently severe to compel her on more than one occasion to quit, only to be talked into returning to work later by Abohasen or Abohasen's wife. The pattern was alleged to have continued until Abohasen terminated Skamla's employment by letter dated April 17, 1988. The letter cited chronic absenteeism and tardiness as the grounds for termination.
 
 
 6
 LAM, of course, painted at trial a markedly different picture of Skamla's tenure there, completely denying any sexual harassment on Abohasen's part and portraying Skamla as an unreliable and disruptive employee who vindictively fabricated the sexual harassment claim, created a "soap opera" atmosphere in the office, was chronically late or absent, and wrote company checks without authorization.
 
 
 7
 Skamla filed a complaint with the Fairfax County Human Rights Commission (Commission) in July 1988. The Commission investigated Skamla's allegations and conducted a fact-finding conference in their office in Fairfax in February 1989.
 
 
 8
 Before the Commission made any factual findings on Skamla's claim, and in order to toll the statute of limitations on some of her counts, Skamla filed the instant action, alleging discrimination based on appellees' violation of the Fairfax County Human Rights Ordinance (Count 1), assault and battery and intentional infliction of emotional distress (Count II), violation of her right to privacy (Count III), and wrongful discharge (Count IV).
 
 
 9
 LAM then moved to dismiss Skamla's complaint arguing that a) Skamla had no private right of action for violation of the Fairfax County Human Rights Ordinance; b) Skamla had not pled a cause of action for wrongful discharge that came within the public policy exception in Virginia; c) Skamla had not pled sufficient facts to state a claim for intentional infliction of emotional distress; and d) there was no common law right to privacy in Virginia.
 
 
 10
 On April 17, 1989, Skamla withdrew her claim of sexual discrimination pending before the Fairfax County Human Rights Commission at the request of the Commission.[2] At the time of the withdrawal, the Commission had made no findings.
 
 
 11
 The district court issued a scheduling order on May 1, 1989, setting July 14, 1989 as the date by which all discovery was to be completed.
 
 
 12
 After a hearing on LAM's motion to dismiss, the court dismissed Count I of Skamla's complaint, ruling that she had no private right of action to enforce alleged violations under the Fairfax County Human Rights Ordinance. The court also dismissed Skamla's claims of assault and battery and intentional infliction of emotional distress against LAM, ruling that her remedy against the company concerning those allegations was exclusively within Virginia Workman's Compensation law because the allegations of infliction of emotional distress constituted an "accident." The court did, however, allow those claims to proceed against Abohasen individually. The court also retained Skamla's wrongful discharge claim against LAM, ruling that her allegations came within the public policy exception of Virginia law to at-will employment.
 
 
 13
 On May 10, 1989, LAM filed an answer as to Skamla's remaining counts and counterclaimed against Skamla, alleging intentional infliction of emotional distress and attempted conspiracy to injure LAM in trade, business or profession in violation of Va.Code Ann. Sec. 18.2-499(b).
 
 
 14
 Skamla filed discovery requests against both LAM and Abohasen on May 11, 1989. The papers included requests for all personnel files of LAM employees for the previous five years, information concerning LAM's and Abohasen's banking records, time cards, and other documents by which employee working hours may have been recorded, and tax returns and other specified financial records, including records of financial dealing between management and the company. LAM objected to Skamla's discovery requests on May 26, 1989.
 
 
 15
 Skamla moved to compel certain discovery on June 12, 1989, particularly as it related to financial records and employees' time records. LAM responded on June 21, 1989. During a June 23, 1989 hearing on the matter, the district court made no formal ruling, instead directing the parties to resolve the dispute based upon the issues left in the case. Skamla was permitted to delve into financial matters that might pierce LAM's corporate veil and indicate any financial dealing between LAM and Abohasen. As to Skamla's request for personnel records of current and former LAM employees, the court respected the privacy rights of those employees and restricted Skamla's discovery only to those files of individuals who would provide her with a release.
 
 
 16
 Discovery continued in the form of depositions, but disputes permeated all phases of discovery. In the first two weeks of July 1989 alone, the parties made numerous motions to compel and motions for protective orders, the pattern continuing up to the day of trial. The parties were ultimately unable to resolve the disputes concerning Skamla's initial discovery requests. In response, the district court entered an order on July 12, 1989 permitting the parties a notice for hearing to argue any unresolved discovery problems after the July 14, 1989 cut-off date. Skamla filed a supplement to her motion to compel discovery on August 21, 1989; LAM filed its opposition on August 25, 1989. After hearing and argument on August 25, 1989, the court denied Skamla's motion to compel, ruling that the discovery cut-off was July 14, 1989 and that because the numerous motions and accompanying hearing had not resolved discovery problems, the court would halt discovery as of the date of its order.
 
 
 17
 On the morning of September 25, 1989, the first day of trial, LAM swore out two felony warrants against Skamla with the Fairfax County police. The counts were based on LAM's allegations that Skamla had forged signatures and cashed checks without authorization while in the employ of LAM. LAM asserted during the trial that such alleged forgeries were also legitimate grounds for dismissal, even though discovered after the fact.
 
 
 18
 Trial began on September 25, 1989 before a jury of six. The trial court dismissed Abohasen's claim of intentional infliction of emotional distress pursuant to Skamla's motion for directed verdict, without submitting it to the jury, on September 27, 1989. On September 28, 1989, after a three-day trial, the jury returned its verdict, affording no relief to any party. Immediately after the jury was dismissed, Skamla was served in the courtroom with the arrest warrants issued on September 25, 1989 concerning the allegedly unauthorized checks.[3]
 
 
 19
 Skamla filed a timely motion for a new trial on October 16, 1989. On the issues relevant to the instant appeal, Skamla argued that she was prejudiced by the district court's initial dismissal of her discrimination claim based on the Fairfax County Human Rights Ordinance, and that the trial court's subsequent denial of reinstatement of the claim after a private right of action under the Ordinance was, in fact, recognized by the court in another case. Skamla further argued that her inability to litigate the claim limited the scope of her discovery, affected her burden of proof, and affected the instructions given to the jury. The district court denied the motion, ruling that the decision of the jury was not contrary to the weight of the evidence and that even if Skamla's discrimination claim had not been dismissed, the jury heard the same evidence it would have heard otherwise, and could have been expected to reach the same result.
 
 
 20
 Skamla filed a timely notice of appeal on December 7, 1989. Neither LAM nor Abohasen has filed an appeal or crossappeal.
 
 II. Private Right of Action
 
 21
 The threshold issue of whether the Fairfax County Human Rights Ordinance, Fairfax County Code, Chapter 11 provides a private right of action is somewhat complicated by the fact that Judge Cacheris has ruled three times on the question, reaching a different result in the third case. Skamla cites that different result in support of her assertion here that Judge Cacheris erred in dismissing her discrimination claim.
 
 
 22
 When LAM filed its motion to dismiss Skamla's discrimination claim on April 18, 1989, it cited Judge Cacheris' earlier, unpublished order in Huth v. Erol's, Inc., CA No. 87-0401A (E.D.Va. July 17, 1987). In Huth, another sex discrimination case, the defendants convinced Judge Cacheris that pursuant to Virginia's Dillon Rule[4] of strict statutory construction, individual counties may not unilaterally grant powers not expressly permitted by the state legislature and that despite the language of the Ordinance, its enforcement was left solely to the County. Judge Cacheris, following Huth, thus dismissed the sex discrimination count of Skamla's complaint on May 5, 1989.
 
 
 23
 Subsequently, on July 24, 1989, Judge Cacheris, ruling in the third case, appeared to reverse his Huth ruling by holding that individuals do have a private right of action for alleged violations of the Fairfax County Human Rights Ordinance in the area of housing discrimination and that such private action is consistent with the Dillon Rule. Bradley v. Carydale Enterprises, 730 F.Supp. 709 (E.D.Va.1989). Skamla thus has contended that Bradley is now the law of Virginia governing federal courts. She asserts that reversal on the point in issue in the instant case is required.
 
 
 24
 The Fairfax County Human Rights Ordinance is contained in Chapter 11 of the County Code. Various sections of the Ordinance define unlawful practices in such areas as housing,[5] employment,[6] and public accommodations.[7] Other sections provide for enforcement proceedings[8] and for enforcement of the Ordinance's provisions by the court[9] or by county agencies.[10] Several sections bear directly on the private right of action question. Section 11-1-12, entitled "Enforcement Proceedings Initiated By the Filing of a Complaint," provides, in pertinent part,
 
 
 25
 (a) Complaints. A complaint may be filed with the [Human Rights] Commission by any person alleging that a violation of this Chapter has been committed.
 
 
 26
 (Emphasis added.) The section says nothing about an alternative forum in which the complaint may be filed.
 
 
 27
 With regard to enforcement of the Ordinance's provisions, section 11-1-16, entitled "Enforcement by the Court," provides, in pertinent part,
 
 
 28
 (b) Whenever the Commission has a reasonable cause to believe that any person has engaged in, is engaging in or is about to engage in a violation of this Chapter, the Commission may seek through the County Attorney, with the approval of the Board of Supervisors, through appropriate enforcement authorities, prevention of or relief from a violation of this Chapter prohibiting discrimination and to exercise such other powers and duties as provided for in this chapter, however, the Commission shall have no power itself to issue subpoenas, award damages or grant injunctive relief.
 
 
 29
 The language in the County Code ostensibly authorizing private individuals to take unilateral action, and the language upon which Skamla relies, is found in section 11-1-20, entitled "Non-Exclusive Remedy," which provides,
 
 
 30
 Any person who is aggrieved by any act prohibited herein may bring an appropriate action in a court of competent jurisdiction to seek damages, redress of injury, or injunctive relief arising out of any act prohibited herein as provided for by any applicable law. Nothing herein shall prevent any person from exercising any right or seeking any remedy to which he or she might otherwise be entitled, nor shall any person be required to pursue any remedy set forth herein as a condition of seeking relief from any court or other agency, except as is otherwise provided by applicable state or federal laws.
 
 
 31
 On its face, section 11-1-20 apparently provides for a private right of action under the Ordinance. Another, and more plausible explanation, however, especially when one considers that section 11-1-12 provides for the Commission as the only forum in which to file a complaint and in light of the title of the section--"Non-Exclusive Remedy"--is that nothing in the Ordinance precludes an aggrieved party from seeking relief under any other law, such as Title VII. Section 11-1-20 does not create a cause of action. It merely preserves any otherwise existing cause of action.
 
 
 32
 As LAM points out, it would be incongruous if the Ordinance allowed a private plaintiff unilaterally to enforce its provisions when section 11-1-16 requires the Human Rights Commission to receive a recommendation from the County Attorney and authorization from the Board of Supervisors before bringing suit itself. We would also note that section 11-1-20 does not follow immediately after the sections of the Ordinance empowering other entities to enforce the Ordinance's provisions, further convincing us that the latter interpretation of the section, one not reading a private right of action into its language, is the proper one.
 
 
 33
 We find additional support for such an interpretation after a consideration of county human rights commission enabling legislation in the Virginia Code. Va.Code Ann. Sec. 15.1-783.1, entitled "Commission on human rights; human rights ordinance," provides, in pertinent part,
 
 
 34
 The board of supervisors of an urban county executive form of government may enact an ordinance prohibiting discrimination ... The board of supervisors may enact an ordinance establishing a local commission on human rights which shall have the following powers and duties:
 
 
 35
 .............................................................
 
 
 36
 ...................
 
 
 37
 * * *
 
 
 38
 3. With the approval of the county attorney, to seek, through appropriate enforcement authorities, prevention of or relief from a violation of any ordinance prohibiting discrimination and to exercise such other powers and duties as provided for in this article; however, the commission shall have no power itself to issue subpoenas, award damages or grant injunctive relief.
 
 
 39
 One notices immediately that the language of section 11-1-16 of the County's Human Rights Ordinance tracks the language in the third enumerated power set out in Section 15.1-783.1 of the Virginia Code. LAM asserts, as it did below, that the Code section does not grant Fairfax County the authority to delegate to a private person the power to enforce provisions of its Human Rights Ordinance, but instead limits the County to granting its Human Rights Commission the authority to enforce the ordinance itself, after obtaining the approval of the County Attorney. And because Virginia follows Dillon's rule of strict construction, the County is precluded from delegating its enforcement authority even if it wanted to. See Hylton Enterprises, Inc. v. Bd. of Supervisors, 220 Va. 435, 258 S.E.2d 577 (1979); County Board v. Brown, 229 Va. 341, 329 S.E.2d 468 (1985).
 
 
 40
 LAM's argument is persuasive. Even without Dillon's Rule, a fair reading of section 11-1-20 simply stands for the proposition that bringing a complaint before the County Human Rights Commission is not an aggrieved party's exclusive remedy; he or she can still bring an action under any other antidiscrimination statute, such as Title VII.
 
 
 41
 That still necessitates our dealing with Judge Cacheris' opinion in Bradley. Bradley involved a claim of housing discrimination on the basis of race. The plaintiff/tenant had filed a complaint with the Fairfax County Human Rights Commission. After conducting a fact-finding investigation and public hearings, the Commission determined that there was probable cause to believe that the Human Rights Ordinance had been violated. For unexplained reasons, however, the County Board of Supervisors declined to take action on the matter. The plaintiff then filed suit in district court, asserting a number of state and federal causes of action including violation of the Fairfax County Human Rights Ordinance. In earlier, pre-trial motion hearings before Judge Ellis, the defendant's motions to dismiss the complaint were denied, Judge Ellis specifically holding that the plaintiff had stated a valid claim under the Human Rights Ordinance. Bradley v. Carydale Enterprises, 707 F.Supp. 217, 224-25 (E.D.Va.1989).
 
 
 42
 When Bradley went to trial, Judge Cacheris raised the Dillon Rule sua sponte. He began his analysis by noting that,
 
 
 43
 Virginia adheres to Dillon's Rule of strict construction and its corollary which control the powers of local governing bodies. The Rule and its corollary provide that a local governing body's powers are fixed by statute and are limited to those powers which are expressly stated or necessarily implied.
 
 
 44
 .............................................................
 
 
 45
 ...................
 
 
 46
 * * *
 
 
 47
 The [Human Rights] Ordinance itself, provides for a private right of action.[11] The enabling legislation, however, does not expressly authorize the creation of a private right. The court must determine whether the legislation in effect at the time the Ordinance was enacted necessarily implies that a county may create a private cause of action to enforce its human rights ordinance.
 
 
 48
 Bradley v. Carydale Enterprises, 730 F.Supp. at 724 (emphasis added). The court next found the language in Sec. 15.1-766.1 (now Sec. 15.1-783.1, supra ) of the Virginia Code inconclusive because it neither granted nor denied the County the power to create a private right of action. By looking to section 36-94(b) of the Virginia Fair Housing Law, Va.Code Ann. Sec. 36-94(b), which specifically provided for private rights of action, the court was able to conclude that the authority to bring a private housing discrimination suit under the County Human Rights Ordinance was "necessarily implied." Id. at 725. However, without similar enabling legislation in the employment area from which a private right of action may be necessarily implied, Skamla is precluded from bringing a claim of employment discrimination on the basis of sex under the County Human Rights Ordinance.[12]
 
 
 49
 III. Denial of Skamla's Motion to Compel Discovery
 
 
 50
 Skamla advances several assignments of error with regard to the district court's treatment of her attempts at discovery.[13] First, she contends that the court erred in denying her motion to compel discovery of LAM's personnel records. We review such denials under an abuse of discretion standard. Erdmann v. Preferred Research, Inc., 852 F.2d 788, 792 (4th Cir.1988). See also Western Electric Co., Inc. v. Piezo Technology, Inc., 860 F.2d 428, 430-31 (Fed.Cir.1988) (district court's discovery decision is abuse of discretion when court's decision is clearly unreasonable, arbitrary or fanciful, decision is based on erroneous conclusion of law, court's findings are clearly erroneous, or record contains no evidence upon which district court rationally could have based its decision).
 
 
 51
 On May 1, 1989, the district court issued a scheduling order requiring that pre-trial discovery be concluded by July 14, 1989. On May 11, 1989, Skamla served interrogatories and document requests upon LAM and Abohasen. Skamla sought to discover, inter alia, LAM's personnel records in order to determine whether other personnel were routinely noted as being late for work, because LAM, in its answer, claimed that tardiness was one of the bases for Skamla's discharge.
 
 
 52
 After LAM and Abohasen filed responses that consisted mainly of objections, Skamla filed a motion to compel discovery. At the June 23, 1989 hearing on the motion, the district court withheld ruling on the majority of the parties' discovery disputes, instead directing that the parties resolve the disputes themselves and then return with any matters that might remain unresolved. The court did rule, however, that Skamla could not obtain LAM's personnel files, holding that such a request would violate the privacy rights of those individuals. The court only allowed Skamla to obtain the records of those individuals from whom she might obtain waivers.
 
 
 53
 It is unnecessary to examine the issue further because of one fact Skamla failed to mention in her brief: in a subpoena duces tecum served upon Abohasen's wife, Chris Abohasen, on September 13, 1989, she was directed to appear with, inter alia, all of the company's personnel records. LAM attempted to quash the subpoena, but the motion was denied on September 25, 1989 and the records were turned over to Skamla on that date.[14]
 
 
 54
 Second, and perhaps more troubling, are Skamla's assertions regarding her inability to discover certain company checks which LAM alleged, during depositions and at trial as a second ground for dismissal, she had signed without authorization.
 
 
 55
 Skamla claims that at her September 7, 1989 deposition, LAM presented her and her counsel with copies of certain checks for the first time and questioned her concerning the signatures. The checks apparently turned up in one of LAM's exhibits at trial, but had never been produced in response to a discovery request. She further claims that when confronted with copies of the checks at her deposition, she invoked the Fifth Amendment as her response. She also states that she testified at trial that under certain circumstances, she had signatory authority concerning the company accounts and that the checks LAM presented to her during her deposition were ones she was authorized to sign. Finally, Skamla states she was unaware that during trial, LAM had two felony warrants sworn out against her on the basis of the checks. Thus, she continues, had she been aware that the checks were to be the basis of a criminal charge against her, she would have had further justification for access to the checking account records. She also adds that had she known about the warrants before trial began, she might have testified about the checks differently at trial.
 
 
 56
 LAM's response to those contentions is to assert in rather general terms that after filing her "voluminous" document request, Skamla had not made a good faith effort to consult with opposing counsel before filing her motion to compel discovery, but chose instead to send opposing counsel "an atavistic threatening letter," and then waited until the hearing on her first motion to compel to discuss discovery issues. LAM further contends that Skamla then waited more than a month after discovery was closed to bring a renewed motion to compel on August 18, 1989. Thus, it concludes, the district court did not abuse its discretion when it denied Skamla's motion and closed discovery on August 25, 1989.
 
 
 57
 The record reveals that both parties acted contentiously towards one another during the entire discovery period. In our view, Skamla's discovery complaints should be laid at her own feet and at those of her counsel. The district court afforded the parties two opportunities to resolve their discovery disputes, and Skamla failed through her own intransigence properly to prepare her case for trial. We thus find that Skamla has failed to demonstrate an abuse of the district court's discretion in denying her motion to compel discovery.
 
 
 58
 The judgment is, accordingly,
 
 
 59
 AFFIRMED.
 
 
 
 [1]
 LAM and Abohasen will hereafter be referred to collectively as "LAM" unless, in the interests of clarity, both should be named, or only one is meant
 
 
 [2]
 Because of a presumption that a court ruling supersedes any action the Commission may take, Commission policy requires claimants to withdraw their complaints if they have filed an action in court on the matter pending before the Commission
 
 
 [3]
 Skamla was arrested and taken into custody by the Fairfax County police and spent the evening in the county jail, unable to post the $20,000 bail. After a bail reduction hearing the next morning reduced bond to $10,000, Skamla's family was able to post the $1,000 necessary for her release
 
 
 [4]
 See, e.g., Board of Supervisors v. Horne, 216 Va. 113, 215 S.E.2d 453 (1975) (local government bodies in Virginia have only those powers expressly granted by the legislature or conferred by necessary implication from express powers)
 
 
 [5]
 Section 11-1-3
 
 
 [6]
 Section 11-1-4
 
 
 [7]
 Section 11-1-5
 
 
 [8]
 Sections 11-1-12, 11-1-15
 
 
 [9]
 Section 11-1-16
 
 
 [10]
 Section 11-1-17
 
 
 [11]
 Here Judge Cacheris cited the predecessor to section 11-1-20 in a footnote. As noted earlier, we do not agree with his conclusion that the section provides a private right of action. In any event, for reasons discussed immediately hereafter, our disagreement with the Judge is not critical to the disposition of the instant case, because Bradley is clearly distinguishable on its facts and on the state law applicable to those facts
 
 
 [12]
 Because we find no private right of action to bring an employment discrimination claim under the Ordinance, we need not address Skamla's contention that the district court, in dismissing her discrimination claim, erred by increasing her burden of proof and by improperly instructing the jury as to the law of wrongful discharge
 
 
 [13]
 We do not here address Skamla's assertion that her discovery efforts were further hampered by the dismissal of her discrimination claim, having found that the claim was properly dismissed
 
 
 [14]
 Counsel for Skamla conceded at oral argument that the records were made available on the opening day of trial. While complaining that the release of the records was too little too late, counsel admitted that he took no step to move for a continuance to provide him an opportunity properly to review the information contained therein